88    37
133   627

### P. W. ROCK et al., Appellants, v. L. H. RINEHART et al., Appellees.

1. **Pleading**: IRRELEVANT MATTER: MOTION TO STRIKE. Where, in an action to enjoin the board of supervisors of a county from selling certain swamp lands, and expending the proceeds in the erection of a courthouse, the plaintiff's petition contained statements in relation to contests had in previous years about changing the location of the county seat, and the diversity of opinion on that subject, and in relation to the swamp lands and the erection of a new courthouse, *held*, that such statements were not introductory to the facts upon which the action was based, and being irrelevant and immaterial, they were properly stricken out on motion.

2. **Counties**: SWAMP LANDS: USE OF PROCEEDS FOR PUBLIC BUILDINGS. The proceeds arising from the sale of swamp lands, received by a county under the acts of congress, may, by proper proceedings, be applied to the erection of a county courthouse.

3. ———: PROCEEDINGS OF BO... OF SUPERVISORS: VALIDITY. Where upon a petition of taxpayers for a special election upon the question of constructing a county courthouse, each of the several members of the board of supervisors of a county consented to ordering a special election, and thereupon the order was duly recorded, and the record read and approved, *held*, that the order of the board was not invalid because no formal vote was taken thereon.

4. ———: CONSTRUCTION OF COURTHOUSE: SPECIAL ELECTION: VALIDITY. The ballot used at a special election in a county upon the question of the election of a county courthouse submitted the following proposition: "Shall the board of supervisors of Iowa county be authorized to order and contract for the erection of a courthouse at Marengo, the county seat of said county, at a cost not to exceed the sum of fifty thousand dollars, from the proceeds arising from the sale of the lands belonging to said county lying in the counties of Ida and Cherokee, in the state of Iowa." Held, that the ballot had but one object, viz., the erection of a courthouse, and, therefore, presented but one proposition; that the proposition was not objectionable as being double because it provided the means of payment.

*Appeal from Iowa District Court.*—HON. J. H. PRESTON, Judge.

SATURDAY, MAY 13, 1893.

THE plaintiffs, citizens and taxpayers of Iowa county, brought this action, in three counts, against the defendants, the board of supervisors of said county, to enjoin them from selling certain lands belonging to said county, and expending the proceeds in the erection of a courthouse in the town of Marengo. The defendants' motion to strike certain parts of the first count was sustained, also their demurrers to the remainder of said count, and to the third count. The plaintiffs elected to stand on said first and third counts, and thereupon the case was submitted on the issues joined, and a decree was entered against the plaintiffs, from which they appeal. The issues and facts appear in the opinion.—*Affirmed.*

*Ranck & Wade, T. S. Kitchen* and *J. W. Raffensberger,* for appellants.

*J. T. Beem, Hedges, Rumple & Lake* and *F. C. Hormel,* for appellees.

GIVEN, J.—The following will be a sufficient statement of the proceedings had by the defendant board

of supervisors: On the fourteenth day of November, 1891, a petition as follows, signed by resident taxpayers of the county, was presented to the defendant board, then in session, and filed and considered:

"*To the Board of Supervisors of Iowa County, Iowa:*

"The undersigned, residents and taxpayers of Iowa county, respectfully petition your honorable body to submit to the legal voters of Iowa county the question of authorizing the land belonging to the county in Ida and Cherokee to be sold, for the purpose of applying the proceeds to the construction of a courthouse and other public buildings at the county seat; the question to be submitted, under such objections and restrictions as the board sees fit to be imposed, at a special election to be held at an early date."

On the same day said board, in session, agreed to, and entered upon its record an order for, a special election, as shown in the following notice, which was published as required by law.

"NOTICE OF SPECIAL ELECTION.

"*To the Legal Voters of Iowa County, Iowa:*

"Notice is hereby given that the board of supervisors of Iowa county, Iowa, on the fourteenth day of November, A. D. 1891, ordered that a special election be held within and for said county on Tuesday, the twenty-ninth day of December, A. D. 1891, and that at such election there be submitted to the legal voters of said county the following question, to wit: 'Shall the board of supervisors of Iowa county be authorized to order and contract for the erection of a courthouse at Marengo, the county seat of said county, at a cost not to exceed the sum of fifty thousand dollars, from the proceeds arising from the sale of the lands belonging to the county, lying in the counties of Ida and Cherokee, in the state of Iowa: provided, that no sum shall be appropriated therefor, except that received

from the sale of said lands; and further provided, that in the sale of said lands no more than one quarter section shall be sold to any one purchaser, and that same be sold for not less than one-fourth of the purchase money cash in hand, and balance on time, not to exceed five years, with interest at seven per cent. per annum, payable annually; and further provided, that said board of supervisors, before entering into a contract for the erection of such courthouse, shall require a bond, with approved security, in the penal sum of twenty-five thousand dollars, conditioned that no part of the cost of said courthouse shall be paid by said county, other than by the proceeds arising from the sale of said lands.' Ballots shall have printed thereon the above question, and those voting in favor thereof shall have the word 'Yes,' and those voting against the same shall have the word, 'No,' underneath said question. Of all of which, all persons interested will take due notice. Given under my hand and official seal, at Marengo, Iowa, this fourteenth day of November, A. D. 1891, by order of the board of supervisors of Iowa county, Iowa.

"[SEAL]                    J. T. McGUIRE,
        "Auditor of Iowa County, Iowa."

An election was held in pursuance of said order and notice, at which three thousand, seven hundred and eighty-six ballots were cast, one thousand, nine hundred and fifty-six of which were for, and one thousand, eight hundred and thirty against, said proposition, showing a majority of one hundred and twenty-six for the proposition. The ballot cast was as follows:

"Ticket. Shall the board of supervisors of Iowa county be authorized to order and contract for the erection of a courthouse at Marengo, the county seat of said county, at a cost not to exceed the sum of fifty thousand dollars, from the proceeds arising from the sale of the lands belonging to said county, lying in the

counties of Ida and Cherokee, in the state of Iowa; provided, that no sum shall be appropriated therefor except that received from the sale of said lands; and further provided, that in the sale of said land no more than one quarter section shall be sold to any one purchaser, and that same be sold for not less than one-fourth of the purchase money cash in hand, and balance on time, not to exceed five years, with interest at seven per cent. per annum, payable annually; and further provided, that said board of supervisors, before entering into a contract for the erection of such courthouse, shall require a bond, with approved security, in the penal sum of twenty-five thousand dollars, conditioned that no part of the cost of said courthouse shall be paid by said county, other than by proceeds arising from the sale of said lands."

The lands belonging to said county, lying in the counties of Ida and Cherokee, were received by said county as swamp and overflowed lands, or as indemnity therefor, under the laws of congress and of this state. On January 15, 1892, the plaintiffs commenced this action to enjoin the defendant board from further proceeding under authority of said election. The claims of the plaintiffs are that said lands are not swamp and overflowed lands, and therefore not subject to be disposed of for the purposes of the erection of county buildings, under chapter 77 of Laws 1862 (Miller's Code, p. 1483); that the proceedings ordering said election were illegal for that no vote was taken thereon by the defendant board, and that the election is illegal for that the proposition submitted and voted upon contained two separate propositions, so joined in the ballot that a vote for one necessarily resulted in a vote for the other.

I. It will be observed that the contention is solely as to the legality of the proceedings ordering the elec-

**1. PLEADING: irrelevant matter: motion to strike.** tion, and of the election itself, in the three respects named. The matter stricken from the first count of the plaintiffs' petition includes statements covering about three and one-half closely printed pages, as to contests had in previous years about changing the location of the county seat of Iowa county, the diversity of opinion on that subject, and in relation to the swamp lands, and the erection of a new courthouse. It is not necessary that we set out these statements more in detail. It is sufficient to say that there is nothing in them that is relevant or material to this case. They do not form an introduction or inducement to the facts upon which the plaintiffs base their action, and are not within the rule announced in *Childs v. Griswold*, 15 Iowa, 438, nor *Bellows v. District Township of West Fork*, 70 Iowa, 320.

The four pages of the first count that remain are the statement of the proceedings had by the defendant board and of the election, the kind of ticket voted, what the statute required for the construction of a courthouse, and that, unless enjoined, the defendant board would proceed under said election. The count, as it remained, failed to show any illegality in the proceedings or election. The demurrer was, therefore, properly sustained.

II. The third count, after setting out the proceedings, election, and result, alleges that the swamp land fund can not be diverted to the erection of public buildings, but can only be used for the purposes designated in the statute. We are in no doubt but that the lands in question are within the contemplation of section 1 of chapter 77 of the acts of 1862, and that the proceeds thereof may, by proper proceedings, be applied to any of the uses named in said section, including the erection of public buildings for the use of the county. The right to apply the proceeds of such lands to other than drain-

**2. COUNTIES: swamp lands: use of proceeds for public buildings.**

age purposes has been too long and frequently recognized to now be questioned. It follows from this view that the third count did not state a cause of action, and the demurrer was therefore properly sustained.

III. It appears that when said petition was taken up for consideration, and after some discussion, each member of the board consented to order-

3. ——: proceedings of board of supervisors: validity.

ing a special election, and thereupon the order was duly recorded, and the record read and approved. The appellant contends that the action is illegal for the reason that no formal vote was taken, and cites *Thompson v. Linn*, 35 Iowa, 361. This complaint is based upon an omission to pursue parliamentary rules in agreeing to an order for an election. The rules under consideration in *Thompson v. Linn* were those which the board of directors were authorized to prescribe touching the employment of teachers by subdirectors, and are not in point. We find nothing in the rules adopted by the defendant board, nor in the law, that required them to pursue the forms of parliamentary rules in agreeing to this order. We have the fact that all the members consented to the order, and it was duly recorded, approved, and signed. It is this consent, recording and approval that gives it legal life and vitality. See *Griggs v. Kimball*, 42 Iowa, 512.

IV. The remaining and important question is whether, in view of the form of ballot cast at said elec-

4. ——: construction of courthouse: special election: validity.

tion, the defendant board may legally proceed to order and contract for the erection of a courthouse at Marengo at a cost not exceeding fifty thousand dollars, to be paid by the proceeds arising from the sale of said lands. Under section 1, of chapter 80, of the Laws of 1876 (Miller's Code, p. 80), it is not competent for said board to order the erection of a courthouse, when the probable cost will exceed five thousand dollars, "until a proposition therefor shall have been first sub-

mitted to the legal voters of the county, and voted for by a majority of all voting for and against such proposition." Under chapter 77, of the Laws of 1862, it is made lawful for counties owning swamp and overflow lands to devote the same, or the proceeds thereof, in whole or in part, "for building county buildings: * * * provided, that before any of said land, or the proceeds thereof, shall be so devoted to any of the purposes aforesaid, the question whether the same shall be so done shall be submitted, at some general or special election, to the people of the county." By chapter 135, of the Acts of 1870, the board is authorized, for that purpose, "to call a special election, if properly petitioned for by the legal voters of the county." The ballot cast follows the order and notice for the election, and the contention is upon the following part of the ballot: "Shall the board of supervisors of Iowa county be authorized to order and contract for the erection of a courthouse at Marengo, the county seat of said county, at a cost not to exceed the sum of fifty thousand dollars, from the proceeds arising from the sale of the lands belonging to said county, lying in the counties of Ida and Cherokee, in the state of Iowa?" No question is made upon the other conditions contained in the ballot, and hence they are not further noticed.

The appellants contend that two separate and distinct propositions are contained in this ballot, so joined that a vote for one necessarily resulted in a vote for the other, namely: "Shall the board of supervisors of Iowa county be authorized to order and contract for the erection of a courthouse at Marengo, the county seat of said county, at a cost not to exceed the sum of fifty thousand dollars?" "Shall the swamp-land fund belonging to Iowa county be devoted wholly to the construction of a courthouse at Marengo, in Iowa county?" Elections like this are governed by the same

rules that apply to the election of officers. In canvassing the vote the intention of the voters must be ascertained from their ballots. The language of the ballot is to be construed in the light of facts connected with the election. *Hawes v. Miller*, 56 Iowa, 396. The appellants cite and rely upon *McMillan v. Lee Co.*, 3 Iowa, 312, and *Gray v. Mount*, 45 Iowa, 591. In the case of *McMillan v. Lee Co.*, the proposition submitted to be voted on at the same time was whether or not the county would subscribe to the capital stock of three different railroad companies, one hundred and fifty thousand dollars in each, with a provision as follows: "That the said subscription shall not be made to either of said companies unless the vote shall be carried in favor of each and all of them." While it is intimated that the three propositions might have been submitted at the same time in such a manner as to be voted upon separately, it is held that under the clause last quoted no single question was submitted, but the fate of each proposition was made to depend upon the result of all three. Thus combined, the voter who favored one or two of the propositions, and opposed the others, could not vote his sentiments. He must vote for or against all. The vice in such a submission is that by thus joining different propositions a popular and desirable proposition may be made to carry one that is not desired; or an undesirable measure, to defeat one that is desirable.

In *Gray v. Mount* the proposition submitted was: "Shall the swamp-land fund of Guthrie county, Iowa, be devoted by the board of supervisors of said county to the erection of a courthouse at Guthrie Center, in said county, and a county high school in the town of Panora, in said county, in the proportion of two-thirds thereof to the erection of said courthouse, and one-third to the erection of said county high school building?" In passing upon the legality of this proposition

this court held that the object is of the essence of the proposition; that the appropriation for a given object is the proposition submitted; that, if there are two objects, there are two propositions, and, if submitted together, the voter can not vote for one, and against the other. *Supervisors, etc., v. Mississippi & W. R'y Co.*, 21 Ill. 373, and other Illinois cases following it, are also cited by appellants. In those cases, as in *McMillan v. Lee Co.*, the proposition was in aid of more than one railroad company, and was held bad under their statute. *Lewis v. Commissioners*, 12 Kan. 213, cited, holds that the commissioners could not, by construction, enlarge the authority given by a vote upon a single proposition so as to include another. A careful reading of the ballot under consideration, in the light of facts connected with the election, shows marked distinctions between this and the cases cited. There is but one object,—the erection of a courthouse, —while in those cases there were two or more. Following *Gray v. Mount, supra,* we must say that, there being but one object, there was but one proposition.

It is contended that as the authority to submit the question of devoting the proceeds of swamp lands is under one statute, and to erect a courthouse under another, they are necessarily separate propositions, and must be voted on separately. If a proposition was submitted and carried under chapter 77, of the Laws of 1862, authorizing a board of supervisors to devote, say fifty thousand dollars of the proceeds of the county's swamp lands to the erection of a courthouse for the use of the county, it would hardly be claimed that it did not authorize the board to erect the house, and pay for it out of that fund. Why have a separate election or vote upon a proposition necessarily and expressly contained in that already submitted? If the proposition was to erect a courthouse at a cost exceeding five thousand dollars, to be paid for

by levying taxes, it would be exclusively under chapter 80, of the Laws of 1876. Such a proposition would be of no effect unless accompanied by a proposition to levy the necessary tax. *Starr v. Board*, 22 Iowa, 492. It can not be said that the proposition is double because it provides the means of payment, and yet that is all this proposition does. It authorizes a fifty thousand dollar courthouse to be paid for out of the swamp-land fund. The proposition voted was to devote fifty thousand dollars of the proceeds of the swamp lands to the single object of erecting a courthouse for the use of the county.

It follows from the conclusions announced that the judgment of the district court must be AFFIRMED.