HIRAM HUBBARD, and others, in equity,

*vs.*

WILLIAM WOODSUM, and others.

Oxford.    Opinion January 2, 1895.

*Counties. County Commissioners. Elections. County Buildings. Loans.
R. S., c. 78, §§ 14, 17; Stat. 1880, c. 248; Resol. 1880, c. 217.*

A proposition, submitted by county commissioners to be passed upon by the voters of their county, to see if such commissioners shall be authorized to construct new county buildings, on a new site therefor, at a cost not to exceed thirty thousand dollars, and be further authorized to hire money on the credit of the county for the purpose of such construction, is not objectionable as covering more than one subject matter or thing; the elements of site, construction, cost and credit are no more than parts of one and the same proposition.

A vote of a county, in general terms authorizing its commissioners to hire money on its bonds or notes for public purposes, leaves to the commissioners to determine upon what time and other terms the same shall be issued.

It is not objectionable to require voters to cast their ballots, on special questions submitted to them, with only the word "yes" or "no" inscribed thereon; nor objectionable to require that such ballots be received in a separate box specially for the occasion. Such is the usual method and one sanctioned by legislative precedent.

ON REPORT.

This was a proceeding in equity brought by ten tax payers and inhabitants of Paris, Oxford county, under R. S., c. 77, § 6, par. IX, to enjoin the defendants, who are the County Commissioners and Treasurer of that county, from expending any money of said county, or obtaining any loan, issuing any notes, bonds or other obligations for the payment of money upon the credit of said county, for the purposes of locating or building new county buildings at South Paris.

The defendant's claimed to act under a majority vote, in favor of the proposed removal of the county buildings to South Paris, thrown at an election under R. S., c. 78, § 14.

By the returns made to the County Commissioners there appeared to be 3299 votes thrown in favor, and 3149 votes thrown against, the proposition.

The case is sufficiently stated in the opinion.

*J. P. Swasey and O. H. Hersey*, for plaintiffs.

Remedy : *Borne* v. *Smith*, 47 Ill. p. 482 ; *Wheaton* v. *Wyant*, 48 Ill. p. 364.

The question which the commissioners are only empowered or authorized by statute to submit, namely, "to erect buildings upon the location designated," cannot be coupled with any other proposition which might be made the subject or necessity of another distinct vote, involving different considerations of doubtful propriety or public policy.    To vote upon this single question is a right which the legal voters have, and any modification of the form of submission not expressly and clearly prescribed in this section is an interference with, and an abridgement of their rights.    15 Mich. 85 ; 33 Mich. 292.

The incorporating into the submission the limitation as to the cost of the county buildings, and language "at a cost not exceeding thirty thousand dollars," was entirely beyond the authority of the county commissioners, and unwarranted by any precedent or law.    What the object of the commissioners might have been, in thus incorporating into their submission such an extraordinary limitation, we can only infer.    Our conclusions are that it was done for the very purpose of influencing the vote, and in our judgment it had that effect.    In other

words, it was a trap, with which to catch votes, for in a county like Oxford, the question of cost of county buildings would have more influence, perhaps than in some of the other counties of the state.    Submission to popular vote must be unconditional.

It is an important requirement in an election for the removal of the county seat that the notice thereof should in all respects conform to the law authorizing such election. *Darnelle* v. *Co. Com.* 3 Neb. p. 244.

Their first notice under the first section of the statute is of their intention to erect new county buildings, which is a paragraph separate and distinct.   Secondly, by paragraph second they further notify the municipal officers that they desire the consent of the county to obtain a loan of money.   It will be observed that the commissioners themselves in the form of their notification, treated the two propositions distinctly and separately, making them the subjects of two distinct paragraphs; but in the article submitted to the towns in their warrant for their March election, under said notices, they unite the two propositions in one article to be determined by a single vote of "yes" or "no."

By the statute, R. S., c. 78, §§ 14, 17, they are made separate and distinct propositions, independent in their character, and to be determined, undoubtedly by different, distinct votes.   They are two distinct propositions, and in no way connected, nor can they be ; and the voters have the right to express their will upon either or both independently, without any limitation or abridgment of that right.   If in the union of these two propositions and their determination upon a single vote, there is no opportunity left for a voter to express himself by his ballot upon both, then we say, it is such an abridgment of a voter's rights, that it must be held legally void in law. *McMillan* v. *Lee Co.* 3 Iowa, 318 ; *Gray* v. *Mount*, 45 Iowa, 591 ; *Rock* v. *Rhinehart*, 55 N. W. Rep. 22.

Where there is no prescribed form, the ballot should show the specific question contemplated by the act so passed upon.    14 Mich. 28.

The simple "yes" on a slip of paper or "no" means nothing as a ballot upon the abstract proposition like the questions submitted in this case.

The vote provided by the county commissioners under the submission of this case, was entirely without precedent, legally insufficient, contrary to all precedents, and considered apart from the question submitted, absolutely meaningless.

Fraud in voting : *Attorney General* v. *Newell*, 85 Maine, 273 ; Am. & Eng. Ency. Law, pp. 353-4.

*A. E. Herrick and S. S. Stearns, Geo. D. Bisbee,* with them, for defendants.

SITTING : PETERS, C. J., WALTON, EMERY, HASKELL, WHITE-HOUSE, WISWELL, STROUT, JJ.

PETERS, C. J. In instituting proceedings to obtain the consent of the county of Oxford for the erection of new county buildings, on a new site therefor, the commissioners of that county issued to the municipal authorities of all the towns and plantations in the county the following notice :

"You are herby notified that it is our intention to erect new county buildings, including court rooms, offices for the several county officers, jury rooms, library rooms, and fire-proof vaults for the records of the probate office, register of deeds, clerk of courts and county treasurer ; also jail and jailer's house, at a cost not to exceed thirty thousand dollars, on the following described lot, situated in the village of South Paris, near the railroad station, and in the shire-town of Paris, but more than half a mile from the present location of the county buildings, to wit : Beginning on the westerly side of Western Avenue, at a point one hundred and ten feet southerly from the northerly corner of land belonging to the heirs of Ira Cleasby ; thence north eighty degrees west, four hundred and twenty-nine feet ; thence north four degrees east, two hundred and forty feet ; thence south eighty degrees east, four hundred and twenty-nine feet, to said Western Avenue ; thence southerly by said Western Avenue, two hundred and forty feet to the point begun at.

"And you are further notified that the consent of the county is asked that the county commissioners have authority to obtain a loan of money for the use of the county to the amount of $30,000, and issue therefor notes or obligations of the county, with coupons for lawful interest, to that amount. And you are hereby directed to insert the following article in the warrant for the town meeting at the next annual election, to be holden March next:

"'To see if the county commissioners shall be authorized to erect new county buildings, including court rooms, offices for the several county officers, jury rooms, library rooms, and fire-proof vaults for the records of the probate office, register of deeds, clerk of courts and county treasurer; also jail and jailer's house, on the lot selected by them at South Paris, and described as follows, viz.: Beginning on the westerly side of Western Avenue, at a point one hundred and ten feet southerly from the northerly corner of land belonging to the heirs of Ira Cleasby; thence north eighty degrees west four hundred and twenty-nine feet; thence north four degrees east, two hundred and forty feet; thence south eighty degrees east, four hundred and twenty-nine feet, to said Western Avenue; thence southerly by said Western Avenue, two hundred and forty feet, to the point begun at; at a cost not to exceed thirty thousand dollars; and to obtain a loan for the use of the county for said sum of thirty thousand dollars, or such a part thereof as they may need, and issue therefor the notes or obligations of the county, with coupons for lawful interest.'

"All in favor to give in their votes with the word 'yes' printed or written thereon, and all opposed with the word 'no' printed or written thereon.

"In order to secure uniformity of action in the several towns, we have prepared printed copies of the above article for use by the several towns, and we recommend that it be inserted in the town warrant next after the article providing for choice of moderator; and that the votes be deposited in a separate ballot box, and that the polls be kept open during the entire session of the town meeting held on that day. Said votes to be received,

sorted and counted, for and against said proposal, by the municipal officers, and they, the said municipal officers, and the clerks of the several towns and plantations in said Oxford county, shall certify and return such votes forthwith to the clerk of the county commissioners, that the same may be examined and action taken according to the statute in such case made and provided.

"And we further recommend that the check list be properly and seasonably posted and used in the several towns and plantations, in voting, and that the newly elected municipal officers be not sworn until after the closing of the polls on the foregoing proposal, so that the same officers may act throughout.

"Given under our hands and the seal of said court, this fourteenth day of February, A. D. 1893.

WM. WOODSUM,      ⎫   *County   Commissioners*
W. W. WHITMARSH,  ⎬        *of the*
J. F. STEARNS,    ⎭   *County  of  Oxford.*"

It appears that the record of the county commissioners' court is in due form, properly authorizing a submission of the question to the legal voters of the county, and that the proposition was carried by a small majority of the persons voting. The closeness of the vote, and the feeling manifested against the result in some localities in the county led to the institution of this bill in equity to see if, upon close investigation and scrutiny, it might be discovered that the result should be avoided for fraudulent voting or for some illegality in the proceedings.

On the allegation of fraud the complainants fail. Enough fraudulent or illegal votes are not proved to change the result, although the evidence on that point may be enough to reduce somewhat the majority by which the record declares the vote to have been carried. We have examined the facts produced on that part of the case, but a judicial opinion is not the place in which to insert the many details and calculations of figures which produce the result.

Objections are taken to the form of the proposition submitted by the commissioners to the people. It is contended that two propositions should not have been submitted to be passed upon by one vote, and further contended that whether the county

would consent to new buildings was one proposition, and whether such new buildings should cost not exceeding thirty thousand dollars was another proposition. The argument is that there should have been as many distinct and independent votings as there were subjects or things to vote upon; that the two propositions united in one only would carry more votes than either one would carry alone, and that in that way a result might follow which would be unfair.

In the first place, we think it to be plain that the premises assumed by the complainants are not true. There were not two propositions submitted. But one proposition is contained in the phrase, "to build new county buildings at a cost not exceeding thirty thousand dollars." The most that can be claimed in that respect is that there are two parts in the proposition, such two parts being but one whole. Every whole has its part. The cost of the buildings is only descriptive of the buildings themselves, of their kind and degree. If a man sends his agent to buy a horse for him at a price not exceeding five hundred dollars, is that one proposition or two propositions? Does the agent do one errand or two errands? It would be an awkward situation if the agent reported that he had agreed with a seller of horses as to a price but not as to the horse, or *vice versa.* Or if the agent is intrusted with an authority to buy a house for his principal, to be situated on Oxford street and to be purchased for a price not exceeding thirty thousand dollars, is the agent thereby empowered to do more than one thing? Are not the price and locality parts of the proposition of purchase? Are they not merely descriptive of the house, in a general way defining the kind of house?

A proposition does not become two-fold by annexing to it some condition of qualification. The condition is not of itself a proposition, but only a part of one. It seems to us in the present case that the condition as to the cost of the structures was not only a natural but a necessary part of the question to be voted upon. If a tax-payer were inquired of whether he favored the idea of a new court-house, would he not be likely to answer the question conditionally, and would not his answer

depend upon his information as to where the court-house was to be located, and at what cost it was to be built, and also as to how the necessary means were to be obtained, to build with? And what an awkward result might have followed if these different parts of one and the same proposition had been voted upon separately. It would not be strange, in such a close election as this was, if the vote had resulted in favor of the locality and against all else, or also in favor of building but against the price, or in favor of the price and against building, or there might have been other inconsistent if not absurd results.

The idea on which this contention of the complainants is grounded is found in the construction which courts have given to constitutional provisions existing in some of the states prohibiting their legislatures from embodying two distinct and independent, private or local subjects in one act. In such states two or more schemes of private legislation cannot be grouped together. The object is to prevent a combination of different interests where each one may help the other; "to prevent," as Folger, J., expressed it in a New York case, "the joining one local subject with another or others of the same kind so that each subject should gather votes for all." *Harris* v. *People*, 59 N. Y. 599; *People* v. *Supervisors of Chatuaqua*, 43 N. Y. 10.

But in the cases cited, and in all kindred cases, it is clearly explained that parts of a subject are not to be regarded as separate subjects. In the case last cited it was held that an act to revive the charter of a municipal corporation in the state of New York where the constitutional inhibition referred to exists, had the effect to restore all the legislative, judicial, taxing and police powers which such municipality had previously possessed. The principle invoked by the complainants has been applied in a case where state aid to several different railroads was granted in the same bill, and also in a case where provisions for aiding a railroad and a school district were joined in one bill; and there are several decisions of that kind, but all the cases touching the principle disclaim any application to an act relat-- ing to a single subject or thing although involving even many particulars.

There can be no argument in the case before us that the whole proposition would carry more votes than its different parts would if submitted singly. Really the effect would have been the other way. The voter who disapproved of the location might vote against the proposition submitted. And so might one whose opposition was aroused against the amount of money called for as being either too large or too small. And still another might be opposed to a county debt, and vote in the negative on that account. But the man who would be sure of voting in the affirmative would be one to whom the proposition would be acceptable in all its particulars.

We can find no case whatever having any tendency to support the position of the complainants on this point, but the respondents have referred us to two very pertinent decisions which are directly in opposition to it. It was held in *Blood* v. *Mercelliott*, 53 Penn. St. 391, that an enactment enlarging the boundaries of a county, and locating anew the county site, with provisions for obtaining donations for erecting county buildings, related to only one subject and was not unconstitutional. There is a clear and satisfactory discussion of the same principle in a late case in Iowa not yet published in the regular reports of that state, but to be found in 55 Nor. West. Rep. 21 (*Rock* v. *Rinehart*), where the question submitted to the people was, "Whether a court-house, to cost not to exceed fifty thousand dollars, shall be erected from the proceeds of swamp lands belonging to the county," and it was there held that the ballot was not objectionable as containing more than one proposition. Omnibus bills and such as are of a multifarious character are those that are objectionable. *Davis* v. *The State*, 7 Md. 160. If the provisions all relate to one enterpise it is but one subject matter. *Gifford* v. *New Jer. R. R. Co.* 2 Stockton, 177. Or if such matters are not improperly connected with each other. *Thomasson* v. *The State*, 15 Ind. 455.

Another objection made against the form of the proposition submitted by the commissioners is that it asks permission to use notes or bonds of the county to raise the means with which to build the proposed new structures. But this objection easily falls with the others. They are of the same kind.

Then comes another objection, but of a different character, however, not that the vote submitted contained too much of proposition, but that it did not contain enough, it not being named therein on what time the notes or bonds of the county were to be issued. That is a matter which will take care of itself. It is enough to say that the obligations of the county should be issued on such time as may be reasonable in view of all the circumstances. The discretion of the commissioners must govern that matter. The credit was to be voted by the people,— the details of its execution are for the commissioners.

Whether equity would interfere and break up a result in such a case as this, in a state where there is no constitutional provision or legislative enactment against it, provided this were an instance of a double proposition presented for the ballots of the people, is a question which does not now require either decision or consideration at our hands.

Still another point of objection is made, which we believe to be utterly untenable, and that is that the proposition was wholly in the warrant, and no part of it on the ballot, there being on the ballot itself no indication of what was being voted upon excepting what was to be deduced from the "yes" or "no" thereon. The answer to this objection is that the method adopted here is the usual one, and the method employed in nearly all instances of the adoption of constitutional amendments in this state by a vote of the people. We quote from the language of chapter 217 of the Resolves of 1880, relating to a ballot on our last constitutional amendment which was voted upon and adopted that year:

"*Resolved*, That the aldermen of cities, selectmen of towns, and assessors of plantations, in the state, are hereby empowered and directed to notify the inhabitants of their respective cities, towns and plantations, in the manner prescribed by law, at the annual meeting in September next, to give in their votes upon the amendment proposed in the foregoing resolve; and the question shall be, 'Shall the constitution be amended so as to

change the term of office of senators and representatives, as proposed in said resolve?' And the inhabitants of said cities, towns and plantations shall vote by ballot on said question, those in favor of said amendment voting 'yes,' and those opposed voting 'no,' upon their ballots; and the ballots shall be received, sorted, counted and declared in open ward, town and plantation meeting, and fair lists of the votes shall be made out by the aldermen of cities, selectmen of towns, and assessors of plantations, and signed by them, and attested by the clerk."

Some criticism was passed, at the argument, upon the fact that a separate ballot box was recommended and used for the reception of the votes. That method also has legislative recommendation by the provision contained in chapter 248 of the laws of 1880, which is as follows:

"Whenever any constitutional amendment is submitted to the people for adoption, a ballot box shall be provided at every poll or voting place in the state, in which the ballots or votes for or against every such proposed amendment, shall be deposited separately from all other ballots or votes, and said ballot boxes shall be provided as at other elections."

It will be difficult for any person of dispassionate mind to find any appearance of unfairness in the conduct of the commissioners or any error in their proceedings. Uncommon care and particularity seem to have been observed by them.

It was represented strongly at the argument that thirty thousand dollars are not sufficient to build new buildings including a jail, and that in view of the narrow majority by which the vote was carried, and the insufficiency of funds voted, it would be wise to postpone action in the premises until some further arrangements can be perfected in behalf of the scheme of removal. Those are matters to be presented to the commissioners and not to us; but we assume that the commissioners will take all such suggestions into careful consideration.

On account of the uncertainty of the vote we have no doubt the complainants acted in the public interest in thoroughly investigating the matters, as they have, affecting the result of

the election ; and we think it would be reasonable that they be exonerated from costs, and that they recover their court costs, including the expense of copies and printer's bill, but not including the cost of witnesses, the amount of all the same to be paid out of the treasury of Oxford county upon the warrant of the commissioners.

*Bill dismissed.*