GEORGE WILLIS, Appellant, v. SCHOOL DISTRICT OF SEDALIA et al.

In Banc, July 2, 1923.

1. **SCHOOL ELECTION:** Issuance of Bonds: Double Proposition: **Different Buildings in Different Places.** A resolution of the board of directors of a school district reciting the necessity for issuing bonds "for the purpose of purchasing school house sites, erecting school houses and furnishing the same and building additions to and repairing old buildings" is not subject to the charge of doubleness. The "repairing of buildings" does not present a different question from the purpose to erect new buildings, and even if the purpose is to erect several new buildings in different localities the purpose is still single. The school board is obliged to prepare school facilities for all the children of the district impartially as one undertaking, and the location of buildings at convenient points in different parts of the district does not make the scheme multiple.

2. ———: ———: ———: **The Statute: Unified Scheme.** The statute
    (Sec. 11127, R. S. 1919) "for the purpose of purchasing school-
    house sites, erecting school houses and furnishing the same, and
    building additions to and repairing old buildings," contemplates
    one "loan," which is connected with the "purposes," and a single
    "ballot," and for the negotiation of the bonds voted "for the erec-
    tion of one or more school houses, to be erected on the same or
    different sites"; and those things manifest a single purpose to
    supply school houses adequate to the necessities of the district
    as a whole.

Appeal from Pettis Circuit Court.—*Hon. Dimmitt Hoff-
man,* Judge.

AFFIRMED.

*Paul Barnett* for appellant.

(1)  The submission to the voters of two or more
propositions as a single proposition renders the election
void, and the bonds issued pursuant thereto, invalid.
State ex rel. Pike County v. Gordon, 268 Mo. 321; State
ex rel. Bethany v. Allen, 186 Mo. 673; State ex rel. Jop-
lin v. Wilder, 217 Mo. 261.  (2)  Two or more proposi-
tions to incur indebtedness by the issue of bonds may be
voted on at an election, provided the same be submitted
to the voters on separate ballots.  Robinson v. Wiese,
210 S. W. 889.  (3)  The same rule by which unity is
determined applies both to courthouses and schools.
Beauchamp v. Consolidated School District, 247 S. W.
1006.

*Montgomery & Rucker* for respondents.

(1)  Since the notice of election stated only that
there would be submitted to the voters a proposition to
authorize the board of directors of the school district
to borrow money by the issue of bonds for $500,000,
the amount of the loan required for the purpose of buy-
ing schoolhouse site, building schoolhouses and furnish-

ing same and building additions to and repairing old buildings, the rule against doubleness of submission does not apply, because, the reasons for the rule cease to apply. (2) Since there is no statutory or constitutional requirement that the voter shall be notified of each different building project and the amount required for each and shall be permitted to vote separately for or against each, and, since the voter in this case was not so notified, the court will not make or apply a court-made rule forbidding the submission of the "question of loan," as one question, unless the evils and disadvantages of such mode of submission far outweigh the benefits and advantages thereof. (3) The application of a rule against the submission of the question in the general form of the statutory language, would give rise to evils and inconveniences of administration which far outweigh any possible advantages arising from the application of the rule; such evils, for instance, as (1) requiring the average voter in the cities to cast an unintelligent vote, (2) arraying class against class, section against section, race against race, (3) rendering impracticable the carrying out by the school authorities of any general scheme of enlargement of school facilities, (4) extending the vicious and Unamerican principle of the referendum a little further, by entrusting specific questions of policy and of administrative detail, to the average voter, when wise policy only requires that he be given the right to vote for or against the debt, as a whole. (4) The application of the rule contended for will thwart the will of many communities whose needs are very urgent and invalidate very many issues of bonds which have been voted in the manner approved by this court in its latest and only authoritative decisions on the subject, i. e. the Memphis and Carrollton cases. (5) The submission of the "question of loan," in the statutory language "for the purpose of purchasing schoolhouse sites, erecting schoolhouses and furnishing the same, and building additions to and repairing old buildings," is within the power of

the board of directors of the school district, because all the elements thereof, taken together, constitute one single, harmonious purpose, to-wit: to provide school buildings. Howard v. Independent School District, 17 Idaho, 537, 106 Pac. 692; Public Schools of City of Muskegon v. Vander Lann, 211 Mich. 85; Blaine County v. Hamilton, 64 Wash. 353, 116 Pac. 1076; Aylemore v. Hamilton, 74 Wash. 433, 133 Pac. 1027; Linn v. City of Omaha, 76 Neb. 552, 107 N. W. 983; City of Oakland v. Thompson, 151 Cal. 572, 91 Pac. 389; Clark v. City of Manhattan Beach, 175 Cal. 637; Mitchell v. Charles City, 169 Iowa, 238, 148 N. W. 975; Coleman v. Town of Eutaw, 157 Ala. 327; Hamilton v. Village of Detroit, 83 Minn. 119; Hubbard v. Woodsum, 87 Me. 88; State ex rel. v. Carbon County, 38 Utah, 563; State ex rel. Memphis School District v. Gordon, 223 Mo. 1; State ex rel. Carrollton School District v. Gordon, 231 Mo. 547.

WHITE, J.—The plaintiff brought this suit against the School District of the City of Sedalia and the members of the board of directors of said school district, seeking to enjoin the defendants from negotiating bonds to the amount of five hundred thousand dollars which had been voted for certain school purposes. Defendants filed a demurrer to plaintiff's petition, which was sustained by the trial court. The plaintiff elected to stand upon his petition; judgment was entered accordingly from which he duly appealed to this court.

The petition sets out the proceedings leading up to the election by which the bonds were voted. The board of directors at a special meeting, November 21, 1922, passed a resolution reciting that the high school building of the district was so inadequate as to be much overcrowded, which seriously injured the maintenance of the best standard of work therein; that the Summit School building was rapidly deteriorating and must be rebuilt. The resolution then recited the assessed valuation of the property in the school district, the amount

of bonded indebtedness, and states that it was neces-
sary to issue five hundred thousand dollars in bonds of
the school district "for the purpose of purchasing school-
house sites, erecting schoolhouses and furnishing the
same and building additions to and repairing old build-
ings."

It was further resolved that an election be held for
the purposes mentioned, "subject to the restrictions fixed
by law."

The petition then states that notice was published
of an election to be held December 8, 1922, to submit the
proposition authorizing the board of directors to borrow
money, for the purpose stated in the resolution, by the
issuance of bonds for five hundred thousand dollars. It
is alleged that pursuant to the resolution and notice the
election was held. The ballots contained the words:

"FOR THE LOAN"
"AGAINST THE LOAN"
"(Strike out the clause not voted for)."

At the election 4065 qualified voters of the district
voted for the loan, and 464 voters of the district voted
against the loan.

The petition then alleges that the bonds issued are
invalid for three reasons on account of doubleness in the
submission to the voters:

First: The money was to be used to purchase a high
school site, and for the erection of a high school building,
and for the rebuilding of the Summit School building.

Second: That the school district had no right to
submit a bond election so broadly as stated in the reso-
lution and notice of election.

Third: Because the said notice did not set out with
the degree of detail and with such definiteness as the
statute requires, the purpose for which the loan was re-
quired.

I. As to the first objection to the proceeding of the
board of directors that the bonds were issued for build-

ing a high school, also the Summit School building: that

**Purpose.** does not appear in the notice, nor in the resolution as the *purpose* for which the bonds were required. The recital in the resolution as to those matters were merely for the purpose of showing the inadequacy of the present school facilities and the necessity of more buildings for school purposes. Even if that were a valid objection it cannot be inferred from that recital that the board intended to build another high school building, or to rebuild the Summit School building, as distinct propositions.

II. We are limited to the purpose for which the bonds were required, as that purpose is stated in the resolution and in the notice.

In a case recently decided by this Court in Banc, Hart v. Board of Directors of Nevada School District,

**Doubleness.** 299 Mo. 36, the purpose was very similar to that recited in the notice of election in this case, which was, "for the purpose of building new buildings and additional school buildings to accommodate the scholastics in said district."

The opinion in the Nevada Case, written by RAGLAND, J., so clearly states the law as applied to this case that it is unnecessary to elaborate the doctrine further. It is held there that the vice of doubleness did not pertain to the election in Nevada. The same reasoning holds good here.

It is true that the purpose mentioned in the notice in this case is somewhat more comprehensive and explicit in detail than the notice in the Nevada Case; it includes the purchase of schoolhouse sites and furnishing the same and repairing buildings, in addition to the purposes mentioned in the Nevada Case. We think the reasoning of Judge RAGLAND in the Nevada Case applies with equal force to the resolution and notice in this case.

The objection on account of alleged doubleness is because the notice contemplated different buildings in different localities. To purchase a site, erect a build-

ing and furnish it, as a single proposition, is not claimed to be open to any objection on account of doubleness, which is urged against the purpose to build several build-ings in different localities. Certainly the "repairing of buildings" does not present a different question from the purpose to erect new buildings. The entire argument of appellant turns upon the supposed antagonistic interests involved in 'making the improvements in different places.

III.    While the law as stated in the Nevada Case is complete as affecting this case, it is appropriate that we mention the statute under which this particular election was held. Section 11127, Revised Statutes 1919, which provides as follows:

The Statute.

"Sec. 11127.    For the purpose of purchasing school-house sites, erecting schoolhouses (library buildings) and furnishing the same, and building additions to or repairing old buildings, the board of directors shall be authorized to borrow money, and issue bonds for the payment thereof, in the manner herein provided. The question *of loan* shall be decided at an annual school meeting or at a *special election* to be held for that purpose. Notice of *said election* shall be given at least fifteen days before the same shall be held, by at least five written or printed notices, posted in five public places in the school district where said election shall be held, and the amount of *the loan* required, and for what *purposes.*"

If language means anything the several purposes provided for are to be met by a "loan" (singular); "the loan" is connected with "the purposes" (evidently it may include all those enumerated), and the *"ballot"* in the singular is provided for in the very form used here. The section provides for the negotiation of the bonds voted *"for the erection of one or more schoolhouses, to be erected on the same or different sites."* That is, of course, the bonds voted for by one ballot reading, "For the Loan," "Against the Loan." The constitutionality of that section is not questioned, and it is not suggested

that the proposition was not submitted and the election held in strict compliance with that statute.

It may be noticed also that the Pike County Case, State ex rel. Pike Co. v. Gordon, 268 Mo. 321, upon which the appellant relies for a reversal, deals with an election held under a statute, l. c. 328-329, which did not authorize the building of courthouses, in the plural, but a courthouse. The difference in principle between the two statutes and the two cases is perfectly apparent. One courthouse is entirely adequate to supply the need of a county such as Pike; two courthouses would facilitate the transacting of the public business. But two courthouses, ostensibly for the convenience of the people at the two ends of the county, was likely to have for its primary purpose the effect upon real estate values and commercial prosperity of the sections where the courthouses were to be erected. The people of the county who were not commercially affected by that situation would thereby have been loaded with indebtedness which they would not have incurred if permitted to vote upon the propositions singly, and since they could not have one courthouse without voting for two they voted for two.

The oneness and singleness of the plan to build schoolhouses in a school district is shown by the very necessities of the case as distinguished from the courthouse case. The directors of the district were obliged to prepare school facilities for *all* the children of the district impartially as one undertaking. The notice comprehending the school buildings for the district as a whole was as single as the purchase of furniture for the different rooms of the same schoolhouse. The fact that the buildings should be located at convenient points in different parts of the district does not make the scheme multiple any more than if all the buildings were grouped together in one place.

The objection on account of alleged doubleness is not a valid one, and the judgment is affirmed. All concur; *James T. Blair* and *Graves, JJ.,* in paragraphs 1 and 2, and in the result.