(No. 5038. November 8, 1928.)

CLARENCE KING, Plaintiff, v. INDEPENDENT SCHOOL DISTRICT, CLASS "A," No. 37, a Body Corporate, and the BOARD OF TRUSTEES of Said District, Defendants.

[272 Pac. 507.]

Geo. H. Van de Steeg, for Plaintiff.

Rhodes & Estabrook, for Defendants.

GIVENS, J.—Plaintiff seeks a writ of prohibition restraining defendants from disposing of certain bonds voted at a school election in the defendant school district. The attack centers around the notice which is as follows:

"Public notice is hereby given that a special bond election has been called and will be held in Independent School District, Class A, Number 37, Canyon County, State of Idaho, on Friday, the eleventh day of May, 1928, for the purpose of submitting to the qualified voters of the district the following question, to wit:

"Shall the Board of Trustees of Independent School District, Class A, Number 37, Canyon County, State of Idaho, be authorized to issue negotiable coupon bonds of the district in the amount of one hundred forty-one thousand and no-100 ($141,000.00) Dollars bearing interest at a rate not to exceed 6 per centum (6%) per annum to mature in twenty years from date of issue, to be expended approximately as follows:

Central Building .................................$95,000
Addition and improvement North Side School ..... 32,000
Moving bungalows and improving East Side site ... 5,000
Furnishing and repairs ......................... 9,000

$141,000

"The polling places for said election shall be at the City Hall and the Lakeview School, in the city of Nampa, Idaho, and at said election the polls shall be opened at the hour of 9 o'clock A. M. and closed at the hour of 7 o'clock P. M.

"IN WITNESS WHEREOF, the Board of Trustees of Independent School District, Class A, Number 37, Canyon County, State of Idaho, has caused this notice to be signed by the Clerk of said Board this sixteenth day of April, A. D. 1928.

CHESTER C. MINDEN,

Clerk Board of Trustees, Independent School District, Class A, Number 37, Canyon County, State of Idaho."

In substance the following defects are urged;

1. The notice is indefinite, uncertain and ambiguous.

2. It states more than one purpose.

3. It fails to state the form and plan of the bond issue.

4. The Board failed to divide the District for the purposes of this election.

5. Purposes are stated for which bonds may not be voted.

Section 57, chap. 215, 1921 Session Laws, 457, as amended in chap. 121, 1927 Session Laws, 165, provides the purposes for which bonds may be issued, the essential portion of which is as follows:

"The purpose for which bonds may be issued is to acquire or purchase school site or sites, to build or provide one or more schoolhouses or other needed buildings in said district, or to add to or repair said building or buildings, or to provide or furnish the same with all furniture, apparatus, or equipment including lighting and heating, necessary to maintain and operate the school or schools, or any and all of said purposes."

Section 14 of the same chapter as amended in chap. 259, 1927 Session Laws 481, provides as to notice that it must "contain a brief but clear statement of the purpose of said election, and, in case of the annual school election, the name of the office or offices to be filled; and that nomination therefor must be filed at least six days prior to the election, excluding the day of election; and in case of bond election, the amount of the issue, purpose and period of issue, and form and plan thereof."

Section 42, chap. 215, 1921 Session Laws, 445, is as follows:

"In cities of five thousand or more inhabitants, according to the census of 1920, the trustees shall divide the city into two or more voting precincts for the purpose of the school election and shall specify in the notice of election the place at which the election for each precinct shall be held.

"The notice must be in form and for the time required of notice of school election, and must be given by the clerk of the Board in event of the failure of that official so to do by any two (2) qualified voters of the district." (Sic)

The record herein consists of the application for the writ and the answer and a stipulation as to facts, the latter of which in part is as follows:

" . . . . that the board of said district on the 1st day of September, 1921, at a meeting of the board, divided the district into two voting precincts and provided that all of the district lying north of the Oregon Short Line Railroad tracks should constitute the north precinct and designated that the polling place therein should be at the Lakeview School, and that all south of said railroad should constitute the south precinct and that the polling place therein should be at the City Hall in the city of Nampa, Canyon County, Idaho, and that ever since that time and without any change in the boundaries of said precincts all school elections have been held at the places aforesaid, both of which have been and were at all times generally known to the voters within said district; that the said Oregon Short Line Railroad runs easterly and westerly through said district at or near the center line thereof and furnishes a dividing line between the north and south portions of said district."

█ Relying on *Bradbury v. City of Idaho Falls*, 32 Ida. 28, 177 Pac. 388, where the precise language herein involved was construed, and the word "acquire" held not to include the power to improve, plaintiff urges that bonds may not issue for the improvement of school sites, the statute merely

providing that bonds may be issued to acquire or purchase sites.

The acquiring of a suitable school site ordinarily involves more than obtaining the area involved, and would require grading and any other improvement necessary to render it suitable for the erection and maintenance of a building. Indeed, the improvement of a school site would seem to be involved necessarily in the general act of providing school-houses which is expressly authorized in the statute and would seem to be sufficiently broad to include every detail of providing a schoolhouse, including the preparation of the ground upon which it stands and by which it is surrounded. In the Bradbury case, the narrow construction given the word "acquire" was based largely upon the fact that two companion statutes, one providing for waterworks and the other for power plants, had been amended at the same time, and that in only one of them was the express power to enlarge, repair, etc., included, while in the other, such express power was not included; and it was no doubt properly considered that the inclusion of the express words in one of the statutes and their omission in the other, argued an intention to omit the power where the express language was omitted. We think the Bradbury case is thus distinguishable from the present case, and the power to improve school sites within the bonding statute does not conflict the earlier case.

"The word 'acquire' has a broad meaning, including both purchase and construction. The expression does not indicate the purpose of acquiring two systems, one by purchase, the other by construction. In connection with the context, it means the acquisition of but one system, including the purchase of such property and the erection of such structures as may be necessary to accomplish that purpose." *Clark v. City of Los Angeles,* 160 Cal. 30, 116 Pac. 722, 729.

■ As to the objection that it expressed more than one purpose, in *Howard v. Independent School District,* 17 Ida. 537, 106 Pac. 692, the court had under consideration a notice, in so far as it is material here, as follows;

"That the proceeds from the sale of such bonds shall be devoted exclusively for the purpose of providing said district with additional schoolhouse grounds and erecting a schoolhouse thereon near the site of the present high school building in the city of Lewiston at an estimated cost of $40,000; and for the purpose of providing said district with additional schoolhouse grounds and erecting a four room schoolhouse thereon near Ninth Avenue and Twenty-sixth Street, in the city of Lewiston, at an estimated cost of $12,000 (said schoolhouse to be erected in such a manner that additional rooms may be added thereto whenever the necessities therefor may require without materially damaging such building) and for the purpose of providing said district with additional schoolhouse grounds and erecting a two room schoolhouse thereon in one of the Lewiston Orchard Tracts at an estimated cost of $3000; and for the purpose of furnishing each of said school buildings with proper and necessary furniture, apparatus and fixtures."

In the Howard case, *supra,* the total of the bond issue was $55,000. Segregated in the notice were three items of expenditure. The court held that but one purpose was stated and that it was not necessary that each item be stated separately so that the voter could vote on each item.

The use of the word "purpose" in sec. 3, art. 8, of the constitution was intended in the broad and general sense of whether an indebtedness over the yearly income should be incurred by the municipality or body concerned, and, of course, for the specific but general purpose indicated; but it does not seem to us that the "purpose" meant that a vote should be on each item of expenditure contemplated, but rather, the general "purpose" of borrowing money for the general purpose contemplated. Sec. 18, art. 11, of the California constitution (p. lxxxv, Henning's General Laws of California) is similar to sec. 3, art. 8 of the Idaho constitution, and under the California constitution, a statute joining purposes for one vote is allowed. (*Antelope Valley Union High School District v. McClellan,* 55 Cal. App.

244, 203 Pac. 147; *State ex rel. School District v. Gordon,* 223 Mo. 1, 122 S. W. 1008.)

The design of the statute was to provide that the voters should decide upon the issuance of bonds, not the items for which they should be expended. The statute in the first instance limits the purposes for which bonds may be issued by a district, and secondly, no doubt, the board would be restricted in its expenditure of the money to the purposes enumerated in the notice. The purpose requiring the consent of the voters, however, is whether bonds shall issue, not what the proceeds shall be spent on. That is already regulated by statute. Of course, the voter is entitled to know, and the statute so provides what the money is to be used for, but that is not made by statute an essential question for his consideration.

In other words, school districts are limited in issuing bonds to the purposes specified but as to a bond election, the "purpose" is the incurring of an indebtedness as a whole to be expended as specified.

As to any surplus going into the sinking fund and the general fund under sec. 57, chap. 215, 1921 Session Laws, 457, that is a matter of bookkeeping. It is true that the wording of the various statutory provisions as to the purposes for which school districts may issue bonds has been changed from legislative session to legislative session. Some are conjunctive, some are disjunctive; but the above analysis seems to us correct.

In the instant case there are four items but all are germane to the one purpose—that of providing schools and equipment for the district. Mere numbers do not make inappropriate the principle of the Howard case to the case at bar; hence but one purpose was contained in the notice.

This conclusion is further substantiated by *Corker v. Village of Mountain Home,* 20 Ida. 32, 116 Pac. 108; *Ostrander v. City of Salmon,* 20 Ida. 153, 117 Pac. 692; *Independent Highway District v. Ada County,* 24 Ida. 416, 134 Pac. 542.

In *Cary v. Blodgett,* 10 Cal. App. 463, 102 Pac. 668, 671, the court said:

"The duty of determining the necessity for the expenditure and the propriety of submitting it to the electors and the particular phraseology in which it shall be expressed is cast upon the trustees subject to a reasonable and practicable regard for the right and privilege of the electors to be informed as to the purposes and cost of the proposed improvement that they may exercise at the polls an intelligent and discriminating judgment as to their own interests and the public welfare."

Within the purview of the above case, the notice in the instant case was clear though not particularly specific. But the legislature has not required that it be specific.

Similar notices have been held sufficient in the following cases: *Parks v. School District,* 22 Ariz. 18, 193 Pac. 838; *People v. Sisson,* 98 Ill. 335; *Rock v. Rinehart,* 88 Iowa, 37, 55 N. W. 21; *Board of Education v. Davis,* 120 Kan. 768, 245 Pac. 112; *Hubbard v. Woodsum,* 87 Me. 88, 32 Atl. 802; *Public Schools v. Vander Laan,* 211 Mich. 85, 178 N. W. 424; *Hamilton v. Village of Detroit,* 83 Minn. 119, 85 N. W. 933; *State ex rel. School District v. Gordon,* 223 Mo. 1, 122 S. W. 1008; *State ex rel. Carrollton School District v. Gordon,* 231 Mo. 547, 133 S. W. 44; *Robinson v. Wiese* (Mo.), 210 S. W. 889; *Hart v. Board of Education,* 299 Mo. 36, 252 S. W. 441; *Willis v. School District,* 299 Mo. 446, 253 S. W. 741; *Brice v. McDow,* 116 S. C. 324, 108 S. E. 84; *Blaine v. Hamilton,* 64 Wash. 353, 116 Pac. 1076, 35 L. R. A., N. S., 577; see, also, 35 Cyc. 990–992.

■ The description of the bonds, kind, etc., was sufficiently stated in the notice, when attacked after the election. (*Morse v. Granite County,* 44 Mont. 78, 119 Pac. 286, 290.)

■ Plaintiff contends that the bonds may not be issued to "move bungalows." Section 57, *supra,* specifically authorizes the board to "build or provide" one or more school houses. The legislature evidently intended by the use of the word "provide" to differentiate and add to the powers given by the word "build." In statutes of this kind, words shall be given their usual and ordinary mean-

ing. The word "provide" is defined in Funk and Wagnalls New Standard Dictionary as follows:

"To make, procure, or furnish for future use; obtain so as to have ready or on hand when needed; prepare; to furnish with supplies or prerequisites; put into a state of preparation."

Webster's New International Dictionary defines "provide" as follows:

"To foresee; to look out for in advance; to prepare; to supply; afford; contribute; to furnish; supply."

. From these definitions it is apparent that the word "provide" has a broad meaning sufficient to include almost any means whereby schoolhouses are made available. The question of the right of the board to move a school is not involved herein. Before a board may move a schoolhouse, such removal must be authorized by a vote of two-thirds of the district. Subdivision 10, section 46, 1921 Session Laws, 447. To provide for such purposes is in no way involved with the right to move. The question here is for what purpose the district is authorized to issue bonds under the word "provide." Moving a schoolhouse or other house certainly might be one way of "providing" a schoolhouse.

 The election having been held, the statutes regulatory thereof will be held to be directory unless it appears that the failure to give proper notice or the failure to comply with some other provision of the election laws has affected the result of the election. (*Sizemore v. Board of County Commissioners*, 36 Ida. 184, 210 Pac. 137; *Weisgerber v. Nez Perce County*, 33 Ida. 670, 197 Pac. 562; *Town of Grove v. Haskell*, 24 Okl. 707, 104 Pac. 56; *Seymour v. City of Tacoma*, 6 Wash. 427, 33 Pac. 1059; *State v. Doherty*, 16 Wash. 382, 58 Am. St. 39, 47 Pac. 958.)

The above holding is in harmony with and justified by sec. 16, chap. 215, 1921 Session Laws, 436.

 Under the above cases, the division of the district and the designation of the polling places in 1921, instead of in 1927, is not sufficient to overthrow the election even though the division should have been made for the immedi-

ate election rather than in some previous year. Furthermore, the stipulation of facts, together with the next to the last paragraph in the above notice, indicates that the statute with regard to dividing the district has been substantially complied with.

The alternative writ heretofore issued is quashed.

Costs to defendants.

Budge and Taylor, JJ., and Brinck, D. J., concur.

Wm. E. Lee, C. J., dissents.