THE STATE ex rel. PIKE COUNTY v. JOHN P. GORDON, State Auditor.

**In Banc, July 3, 1916.**

1. **COUNTY BONDS: Duty of State Auditor.** It is the duty of the State Auditor, when bonds for building a county court house are presented to him for registration, to refuse to register them unless he is furnished evidence showing that all conditions of the laws have been complied with in their issuance.

2. ————: **Double Proposition.** Two separate and distinct propositions for incurring a county indebtedness cannot be combined and submitted jointly as one question.

268 Mo.—21

State ex rel. v. Gordon.

3. ———: ———: **Courthouse: Other County Buildings: Ejusdem Generis.** The statute authorizing as one proposition any county "to incur an indebtedness for the purpose of building a courthouse, jail, poorhouse, county sanitarium, or other county buildings" did not, by the use of the words "or other county buildings," authorize the county to submit to the voters, as one question, a proposition to build two courthouses. Those general words must be restricted in their meaning to things of a character like those particularized, such as "courthouse," "jail," etc., and the word "courthouse" cannot be expanded by them to mean two courthcuses.

4. ———: ———: **Two Court Houses: Justice a Unit.** The submission to the voters as a single question a proposition to build two court houses, one at the county seat for all county purposes and another at another town for the accommodation of a common pleas court, cannot be justified on the generalized theory that justice is a unit and the same justice is to be administered in both court houses.

5. ———: **Two Court Houses: Double Proposition.** A proposition to issue bonds in the amount of seventy-five thousand dollars to build a court house at the county seat and in the amount of twenty-five thousand dollars to build another court house at another town in the county for the accommodation of the court of common pleas, as one combined and joint proposition, is double, and the State Auditor is not authorized to register said bonds, although the people by a two-thirds vote authorized the county to incur the indebtedness.

6. ———: **Double Proposition: Increase in Public Facilities.** A proposition, otherwise double, cannot be justified on the theory that the purpose is to increase the public facilities. That purpose inheres in every submission to increase the public indebtedness, whether the public corporation be a school district or a city or a county;[*] and no rule against doubleness could exist if a double proposition could be justified on the ground that the purpose is to increase and improve the general facilities of the corporation; and in this respect there is no difference between a school district and a municipal corporation. [Overruling, so far as they hold to the contrary, State ex rel. Memphis School District v. Gordon, 223 Mo. 1, and State ex rel. Carrollton School District v. Gordon, 231 Mo. 547.]

7. ———: ———: ———: **Validity of Prior Bonds.** Acquiescence in the issuance and sale of prior bonds bars the right to complain of doubleness in the submitted proposition by which they were authorized, and their validity after negotiation would in no wise be affected by a holding that a subsequent submission is double, although both propositions contemplated an increase in the general public facilities of the corporation.

State ex rel. v. Gordon.

## MANDAMUS.

WRIT QUASHED.

*Tom B. McGinnis, Jones & Hayden, Hostetter & Haley* and *Pearson & Pearson* for relator.

(1) Voting on the proposition to issue bonds to build two court houses, in the same county, one at the city of Bowling Green and the other at the city of Louisiana, is not two separate and distinct propositions, for separate, different and distinct purposes, as set out and urged in the first division of respondent's brief. There is no difference between the relator and the respondent, as to what the law is, in this case. The only difference is in the application of the facts to the law. (2) The facts in the cases cited under point one of respondent's brief, are not at all analogous to the facts in the case at bar; with perhaps the single exception of the case of State ex rel. v. Gordon, 223 Mo. 1. The case at bar presents a state of facts showing a much more decided, or striking, singleness of purpose in the proposition submitted to the voters of the county, than is shown in either of the two leading cases, wherein all phases of the difference between a single and a double proposition, submitted to voters of a county, have been very recently, thoroughly and minutely discussed by this court; and, wherein the court held upon the facts, as therein stated, the proposition in each was a single proposition, to-wit: State ex rel. v. Gordon, 223 Mo. 1; State ex rel. v. Gordon, 231 Mo. 547. (3) The one proposition, presented to the voters of Pike County, in voting the appropriation for two court houses, one each at Bowling Green and Louisiana, respectively, was the erection of places, only, for justice to be judicially administered. A court house, is, "the place where justice is judicially administered."

Bouvier's Law Dictionary. Justice, no matter where administered, is a unit; like the North Star, fixed, invariable, unchangeable. The one purpose in the minds of the citizens circulating the petition, in the mind .of the court acting on said petition, and ordering the election, was that justice might be judicially administered, convenient to the citizens of the county. It is exactly the same justice, administered in the court house at Bowling Green, that is administered in the court house at Louisiana. The same judge presides over the court held in both houses. The same sheriff serves process issuing from either court. The same law, and rules, governs the proceedings in either court. The expenses of each court are paid out of the same public fund. There are not two distinct and different purposes, in voting for two court houses, one at Bowling Green and one at Louisiana. The purpose, or the proposition, is the same, to-wit, administration of justice. The buildings are simply the means, or rather the place where, the one main purpose is effectuated. The appropriation for the building of two court houses, as presented by the county court, to the voters of Pike County, is like dividing the circuit court in large cities, into many divisions. The various divisions of a circuit court are not different propositions, or for separate and distinct purposes; but, it is the means of carrying into effect the one purpose, administering justice, to the citizens of a populous city. So here, in the one proposition, to build two court houses in the county of Pike, is the one purpose, the constitutional right of all the citizens of this county, that "courts of justice shall be open to every person, a certain remedy afforded for every injury to person, property or character, and that right and justice should be administered without sale, denial or delay." (4) By virtue of a recent enactment of the Legislature, the law now authorizes, as one proposition, any county in this

State to incur an indebtedness for the purpose of building "a court house, jail, poor house, county sanitarium, or other county buildings," etc. Laws 1913, sec. 8, p. 125. This enactment is radically different from the old statute. Applying the rule of *ejusdem generis* in construing this enactment the words "or other county buildings" mean duplicate or similar to ones previously mentioned; that is, "other such like," or other buildings of like kind or character. State v. Eckhardt, 232 Mo. 52; State v. Gilmore, 98 Mo. 213.

*John T. Barker,* Attorney-General, and *W. T. Rutherford,* Assistant Attorney-General, for respondent.

Two separate and distinct propositions were embraced in the question submitted, thus preventing a fair expression of the will of the voters and thereby rendering the election void. State ex rel. v. Allen, 186 Mo. 673; State ex rel. v. Wilder, 200 Mo. 103; State ex rel. v. Wilder, 217 Mo. 261; McMillan v. County Judges, 3 Iowa, 320; Gray v. Mount, 45 Iowa, 595; Denver v. Hays, 28 Colo. 114; Brown v. Carl, 111 Iowa, 610; Stern v. Fargo, 26 L. R. A. (N. S.) 665, and notes; Knoxville v. Gass, 14 L. R. A. (N. S.) 519, and notes; State ex rel. v. Gordon, 223 Mo. 1.

BLAIR, J.—By this proceeding Pike County seeks to compel the State Auditor to register bonds issued to raise funds to build two courthouses—one in Bowling Green for the circuit court and county offices, and one in the city of Louisiana for the Louisiana Court of Common Pleas. Respondent waived the issuance of the formal alternative writ and demurred. In accordance with our practice in such circumstances, the petition will be permitted to stand as and for the alternative writ.

**Mandamus.**

The argued grounds of demurrer are (1) that no sufficient notice of the bond election was given, and (2) that two separate and distinct propositions were joined in the question submitted, thus preventing the voters from exercising the liberty of choice between the two.

The question submitted to the voters was formulated by the county court in its order calling the election and was stated by it thus:

"Shall the county court of Pike County, Missouri, be authorized and empowered to incur an indebtedness and to issue bonds of said county of Pike to the amount of seventy-five thousand dollars for the erection of a courthouse in the city of Bowling Green, in said county of Pike, and to incur an indebtedness and to issue bonds of said county of Pike to the amount of twenty-five thousand dollars for the erection of a courthouse in the city of Louisiana, in said county . . .?"

The question formulated also included, in detail, the rate of interest, times and place of payment and the power to levy a tax to pay off the bonds. The form of ballot to be used was prescribed and followed the language of that part of the order above set out. The petition and order of the county court and notice of election made it clear the courthouse proposed to be erected at Louisiana was for the occupancy of the Louisiana Court of Common Pleas.

At the election the question submitted received the requisite majority of affirmative votes, and on May 24, 1916, representatives of the county presented the bonds for registration, and this was refused. Thereupon this proceeding was begun.

I. It is respondent's duty to refuse to register bonds unless he is furnished evidence showing "that all conditions of the laws have been complied with" in their issuance. [Sec. 1275, R. S. 1909; Hoff v. Jasper County, 110 U. S. 53.]

County
Bonds.

II. The Constitution (Sec. 12, art. 10) forbids counties to incur, in any year, indebtedness in excess of that year's income "without the assent of two-thirds of the voters thereof voting at an election to be held for that purpose." The Constitution does not provide the manner in which the will of the voters is to be expressed under this section but leaves that to the General Assembly. [Thornburg v. School District, 175 Mo. 1. c. 26.] With respect to counties, the General Assembly has provided a method by the Act of March 22, 1913, Laws 1913, sec. 8, p. 125. That act provides that when it becomes "necessary for any county . . . to incur an indebtedness for the purpose of building a courthouse, jail, poorhouse, county sanitarium or other county buildings . . . in excess of the total income and revenue of such county provided for any one year" one hundred qualified signers may present to the county court a petition "setting forth the object and purpose for which the indebtedness is to be created" and praying that an election shall be held. It then becomes the duty of the county court to call an election "for the purpose set forth in such petition and to make an entry of such order on the record of the court." Section 10 of the same act specifies the forms of ballots as follows: "Appropriation of $——— for the purpose of ———————, Yes" and "Appropriation of $——— for the purpose of ———'———, No." Under this act the county court proceeded in calling the election involved in this case.

*Manner of Submitting Proposition.*

III. This court has long held that under a statute like that just referred to, two separate and distinct propositions cannot be combined and submitted, jointly, as one question, "so as to have one expression of the vote answer both propositions, as voters thereby might be

*Double Proposition.*

induced to vote for both propositions who would not have done so if the questions had been submitted singly.'' [State ex rel. v. Wilder, 217 Mo. l. c. 269, 270, and cases cited.] No decision in this State questions the principle, and courts of other states have almost uniformly applied the same rule. [McMillan v. Lee County, 3 Iowa, l. c. 320; Supervisors v. Railroad, 21 Ill. l. c. 374; Lewis v. Comrs., 12 Kan. l. c. 213; Farmers L. & T. Co. v. Sioux Falls, 131 Fed. l. c. 912 et seq.; Gas and Water Co. v. Elyria, 57 Ohio St. 374; Railroad v. Peterborough, 49 N. H. l. c. 294; Brown v. Carl, 111 Iowa, l. c. 611; Denver v. Hayes, 28 Colo. l. c. 114, 115; Cain v. Smith, 117 Ga. l. c. 904 et seq.; Village v. Seymour, 34 N. Y. Misc. l. c. 95, 96; Clarke v. Board, 27 Ill. l. c. 310; People ex rel. v. County, 22 Ill. l. c. 156; Leavenworth v. Wilson, 69 Kan. l. c. 78 et seq.; S. & Ill. S. E. Ry. v. County Clerk, 74 Ill. l. c. 32; Garrigus v. Board, 39 Ind. 66; Bronenberg v. Board, 41 Ind. l. c. 504; Finney v. Lamb, 54 Ind. l. c. 2; Williams v. People ex rel., 132 Ill. 574; People ex rel. v. Baker, 83 Cal. 149; Gray v. Mount, 45 Iowa, l. c. 591; Truelsen v. Duluth, 61 Minn. 48.]

Relator's counsel do not question the existence of the rule, but seek to show the county court complied with it in framing the question it submitted to the voters.

1. One contention is that the statute ''authorizes, as one proposition, 'any county . . . to incur an indebtedness for the purpose of building a court-house, jail, poorhouse, county sanitarium, *or other county buildings;'* '' that the ''italicized words mean buildings like those specifically mentioned and, therefore, mean ''courthouses'' and, as a consequence, authorize a submission including two courthouses. This argument is designed, it seems, to avoid the force, if any, of the

<span style="font-variant: small-caps">Courthouse: Ejusdem Generis.</span>

statute's use of the term "courthouse" in the singular. The canon of construction invoked cannot be so employed. Its effect is to *restrict* the meaning of the general words to things of a character like those particularized. It does not warrant a construction of the general words as mere repetition, in the plural number, of the things specified in the singular. General words, under that canon, do not explain or amplify particular terms preceding them, but are themselves restricted and explained by the particular terms. The contention made is not tenable.

2. Tested by the general rule, is the question submitted to the voters of Pike County single or does it contain two separate purposes? The proceeds of the bonds were to be used for (1) a county (or circuit) courthouse at Bowling Green, and (2) for a common pleas courthouse at Louisiana. The submission combined the two. The voters could vote for both courthouses or against both court houses. No opportunity was given to vote for one and against the other. This appears from the face of the question submitted.

(a) "The will of the people, expressed by the adoption of the proposition for the borrowing or expenditure of money . . . is the law of the land. The force and effect thus imparted to their will is intended to be given to that will freely expressed. . . . Why should the force and effect of law be given to the vote adopting any proposition which has not rested wholly on its merits for the favor it has obtained at the hands of the people, but which may have been assisted to the votes it received, by other questions, with which it was so connected as that it must stand or fall with them?" [McMillan v. Lee County, 3 Iowa, l. c. 320.] "If they" (two propositions) "are submitted together . . . the voter . . . has no liberty of choice." [Gray v. Mount, 45 Iowa, l. c. 595.]

"All elections, as well for measures as men, should be perfectly free, uninfluenced by any consideration, other than the merits of the individual man or measure proposed." [Supervisors v. Railroad, 21 Ill. l. c. 373.]

"Two or more questions may be submitted at a single election, provided each question may be voted on separately, so that each may stand or fall upon its own merits. But that is a very different matter from tacking two questions together to stand or fall upon a single vote. It needs no argument to show the rank injustice of such a mode of submission." [Lewis v. Comrs., 12 Kan. l. c. 213.]

This is the doctrine approved in State ex rel. v. Wilder, 217 Mo. l. c. 270, and cases cited.

(b) In State ex rel. v. Allen, 178 Mo. 555, this court recognized the rule, approving the doctrine in McBryde v. City of Montesano, 7 Wash. 69. The court held, however, that a proposition to issue bonds for the acquisition, by purchase or construction, of an electric light plant, was single. The end, the court said, was the same, the board of trustees being left to determine the method.

Rule and Examples.

In State ex rel. v. Allen, 183 Mo. 283, a proposition was held single which contemplated the issuance of bonds by a city to purchase an old light and water plant and improve it so as to render it adequate for the city's needs. The statute (l. c. 292) was held to warrant this and the proposition was single in that the design was to provide the city with a single adequate plant.

In State ex rel. v. Allen, 186 Mo. 673, the question submitted proposed an issuance of bonds for the purpose of the erection and the furnishing of a city hall, city prison and hosehouse and for the repair and improvement of a water and light plant, extension of mains, wires, etc. The court held this con-

tained "at least two separate and distinct propositions" and refused to order the bonds registered.

In State ex rel. v. Wilder, 200 Mo. 97, it was held that bonds might be issued for a combined light and water plant. The court directed, if the question should be again submitted, "it should be for 'a combined waterworks and electric light plant.'"

In State ex rel. v. Wilder, 217 Mo. l. c. 269, a proposition was submitted to issue bonds to construct a sanitary sewer in one district in Joplin and a storm sewer in another district thereof. The court, unanimously, held the submission double. The case reviewed previous decisions. None of these decisions supports relator's contention that a submission proposing to issue bonds to raise funds to build two separate courthouses, in separate cities, for different courts and for different amounts, contains but one object and is single.

(c) It is suggested justice is a unit and the same justice is to be administered in both courthouses. To permit generalizations of this sort to justify the union of purposes in submissions Two Courthouses: Justice One Proposition. would at once destroy the rule against doubleness. Cases seeming to support relator's position occur, but some of these depend upon the wording of a statute unlike that involved in this case (Coleman v. Eutaw, 157 Ala. 327; Truelsen v. Duluth, 61 Minn. 48; Rock v. Rinehart, 88 Iowa, 37); and in others in which the facts seem analogous the questions raised and decided are not like that before us (Hubbard v. Woodsum, 87 Me. 88; Kemp v. Hazlehurst, 80 Miss. 443; Wimberly v. Twiggs County, 116 Ga. 50); and in others expressions used are to be confined to the facts, the actual decision being in accord with the decisions of this court. [People v. Sisson, 98 Ill. 335; People v. School District, 102 Cal. 184; People ex rel. v. Counts, 89 Cal. 15; People v. Dunn, 80 Cal. 211.]

(d) The only cases 'cited by relator in support of its contention are State ex rel. Memphis School District v. Gordon, 223 Mo. 1, and State ex rel. Carrollton School District v. Gordon, 231 Mo. 547.

The Memphis and Carrollton Cases.

In the first of these this court, GRAVES, BURGESS and Fox, JJ., dissenting (pp. 27, 28), held unobjectionable a submission which combined propositions to bond a school district (1) to build and furnish a school house in ward one, and (2) to build an addition to a school house in ward two. In that case the court relied largely upon Hubbard v. Woodsum, supra, where the question discussed was whether the purpose to be accomplished and ·the sum to be devoted to it could be combined in the, submission. Speaking through LAMM, J., the majority held there was a resemblance between the rule against doubleness and the constitutional provision (Sec. 28, art. 4) that "no bill shall contain more than one subject." The court concluded the discussion of that phase of the case with this: "There can be no doubt that if the proposition we are considering was an act of the Legislature instead of a proposition voted by the people, the act would stand as against the criticism leveled at it in the case at bar. May we deal more coldly and fastidiously with the people acting as sovereigns than we do with the lawmaker moving in his orbit? If so, why?"

In State ex rel. Carrollton School District v. Gordon, 231 Mo. 547, the question submitted was as to the issuance of bonds for (1) the purchase of a site and the erection thereon of a new school building; (2) the purchase of heating plants for old school buildings; and (3) the purchase of a site and the erection thereon of a new school building for colored children. Respondent contended that submission was double, or worse, but the court, GRAVES and VALLIANT, JJ., dissenting, and BURGESS, J., not sitting, held it

single.   Judge VALLIANT had concurred in the ma-
jority opinion in the Memphis case.   In announcing
this conclusion it was said by LAMM, J., who again
prepared the opinion: "I am commissioned by a
majority of this court to say that we stand by the
Memphis case  .  .  .  In reaching that conclusion"
(that the submission in the Memphis case was not
double) "we levied tribute on the settled ˙judicial
exposition of the constitutional provision (Constitu-
tion, art. 4, sec. 28) providing that 'No bill  .  .  .
shall contain more than one subject, which shall be
clearly 'expressed in its title.'   Reasoning from simi-
lars to similars, we concluded that the reasons un-
derlying that constitutional interdiction were of kith
and kin to the reason supporting the proposition
against doubleness in the matter of bond issues au-
thorized by a vote of the qualified voters of a school
district."   In the same opinion it was said further:
"A statute is presumed to be constitutional.   We did
not rule in the Memphis case that such presumptions
attend the vote of the people on a bond issue pre-
cisely as they do an act of the General Assembly and
do not so rule now.   But we ruled then and rule now
that the mischiefs struck at by the constitutional pro-
vision with reference to legislation are related to the
mischiefs struck at by the rule against doubleness
in propositions submitted to electors.   We ruled there
and we rule here that the spirit of the interdiction
in both instances is the same and that in order not
to apply so acute and hair-splitting an analysis as
would unreasonably handicap legislation, the accepted
doctrine has come to be that the constitutional provi-
sion should be liberally construed;  that too much
detail is as bad as too little;  and that matters ger-
mane and incident to the subject do not constitute
doubleness;  while matters having no material and
natural relation to each other are double in the sense
of the constitutional interdiction.   In the very nature

of things no rule precisely defining doubleness can be laid down fitting each case. But it was not apparent to us in the Memphis case why, the mischief being the same, the spirit and principles of law being the same, the general conception of doubleness in the one instance might not do for a like conception in the other. We so ruled, in effect, in that case, and we stand by that ruling now.''

While the language used is somewhat broad, it is clear the court had in mind the fact that the constitutional provision and the rule against doubleness in propositions submitted to voters in bond elections are designed to prevent "log-rolling," the one in legislation and the other in bond elections. The purpose of each is to prevent the yoking together distinct things to the end that the two combined may attract a majority of the voters when neither, separately, might be able to do so. Without such rules the strong could be made to aid the weak, which, though commendable enough in many situations, does not always work out well in legislation and elections. The kinship between section 28 of article 4 and the rule against doubleness is little, if any, closer than stated. The two decisions negative an intent to hold that all matters which might be included in one act of the General Assembly could be included in one submission to the voters. The court recognized that the presumptions which attend the acts of the State's general agent for legislative purposes cannot be invoked to broaden the powers of a public corporation established for stated purposes. Again, the rule as to titles if extended to submissions leaves no place for the application of *any* rule as to doubleness as to them. It is undeniable that under section 28 of article 4 of the Constitution, the General Assembly has power to include in a single act provisions for voting bonds, by any class of public corporations, for any and all purposes for which such corporations can be author-

ized to vote bonds at all. If the same rule is applied to submissions, it would follow that propositions submitted to the voters of any such corporation could combine in one question proposals for bonds for every purpose for which such corporation could vote bonds at all, and this court would be compelled, under that sort of rule, to hold that the submission was single and unobjectionable. If the submission was no broader, i. e., included no more purposes, than the statute, and the statute was no broader than the General Assembly's power in the premises, it would be sound and single when tested by the rule as to titles. If the submission was broader than the statute, or if the statute was broader than authorized, then the submission would be bad because of the lack (1) of statutory or (2) constitutional authority, and no question as to its doubleness could ever be reached. The only questions would be whether the submission was within the statute and the statute within the Constitution. Under such a rule, the principle conceded by all cases in this and practically all the states, and by counsel, would disappear from our law.

What the court did in the Carrollton case (which depends upon the Memphis case in large part, though explaining it) was to hold that a proposition to vote bonds in separately stated amounts for two separate sites and buildings and for heating plants for other buildings was single. The real grounds upon which this conclusion rested were stated in an effort to distinguish school districts from municipal corporations and to distinguish from other statutes the statute the court was considering. It was held (1) that a school district differed from municipal corporations in that it had but one purpose, i. e. "to educate the children of the State;" that its corporate functions are limited to that purpose, and that "in a field so circumscribed, doubleness in propositions is not so likely to arise as in the larger and more diversified field of mu-

nicipal activity" wherein many purposes are served by municipalities; (2) that under the statute applicable to bond elections in school districts "the expediency of purchasing sites, building school houses and furnishing the same was within the discretion of school boards," and that the voter, under that statute, "does not vote directly on the expediency of building this or that school house, or furnishing the one or, the other, or buying this or that site, but votes on a statutory subject-matter designated as the 'question of loan,' and his ballot can only be 'For the loan' or 'Against the loan;'" that the statute treats these mattters "as one subject, the unity of which is indicated in the ultimate end to be reached, viz., increased or better school facilities."

The court attempted, finally, to put those decisions upon grounds peculiar to the law applicable to school districts. One of the difficulties which confronts us, despite the obvious effort in those decisions to restrict them to school districts, is that the very grounds upon which the distinction was attempted to be made are inconsistent with the existence of a rule against doubleness in any case unless it is introduced by the statute which authorizes bonds to be voted. The contrary is true. The purpose of the rule against doubleness in submissions being to prevent a species of fraud commonly called log-rolling, statutes ought not, in any event, be construed to open the way for such logrolling unless they are so worded as to require that construction. The opinion in the Carrollton case, in part, moves on the assumption of a contrary rule of construction. Recurrence to all the cases in this State prior to the Memphis case disclose they were decided under statutes authorizing bonds to be voted for many enumerated purposes. The court, in those cases, proceeded upon the true theory, i. e. that the joint statutory enumeration of purposes did not warrant a combination in one submission of

distinct purposes. Otherwise, those decisions cannot stand. Further, the suggestion in the Carrollton and Memphis cases that the propositions were lawfully submitted as one because they looked to the general improvement of school facilities, if sound, cannot be limited to school districts, but applies as well to municipalities. No bonds can be voted in the latter except for the general improvement of municipal facilities, and all bonds issued by them must be designed to that end. If all bonds designed for the improvement of the facilities the issuing corporation may establish and maintain can be voted under one submission because their proceeds are to be used to improve municipal facilities, then all purposes may be combined in every submission and all the decisions preceding the Memphis case are unsound and must be overruled, since no rule against doubleness could coexist with a principle such as that mentioned.

The argument in the Carrollton case that the vote is upon the ''question of loan'' and that the ballots were worded by statutory direction ''for the loan'' or ''against the loan'' in some way supported the conclusion the court reached, is bereft of force by the correct rule stated in the Memphis case (223 Mo. 1. c. 19), which is that the purpose of the issuance of bonds in all cases ''necessarily . . . becomes an integral element'' (of the proposition submitted) ''in order to make the proposition intelligible and carry information to the voter.''

In the Memphis case (223 Mo. 1. c. 20), another suggestion was that, in some way, bonds previously negotiated might be affected. There is no ground for such apprehension. The right to question the validity of bonds on the ground of irregularities in proceedings preliminary to their issuance ends with the negotiation of the bonds. Where the power to vote the bonds is absent the rule is different. Such is the gen-

268 Mo.—22

eral rule, established beyond cavil, and so it has been held with respect to bonds attacked, after negotiation, on the ground that the submission was double. Acquiescence in the issuance and sale of bonds bars the right to complain of doubleness in submissions. [Clarke v. Board of Supervisors, 27 Ill. l. c. 310, 311; Van Hostrup v. Madison City, 68 U. S. l. c. 297; Sala v. New Orleans, 21 Fed. Cases, l. c. 221 (No. 12246); Mercy v. Ohio, 17 Fed. Cases, l. c. 65, 66 (No. 9457); Huidekoper v. Buchanan County, 12 Fed. Cases l. c. 838, 839 (No. 6847).] This is interjected because of the somewhat vague but somewhat sinister intimation let fall in the Memphis case and referred to above.

In addition to what has already been written the dissenting opinion of GRAVES, J., in the Memphis case (223 Mo. l. c. 27 et seq.), contains a further review of the principal opinion in that case which clearly points out the unsoundness thereof.

We are unable to distinguish the Memphis and Carrollton cases on principle, and the efforts made in the Carrollton case to distinguish them fails when it is examined in the light of the principle whose existence is conceded. In these circumstances those cases must be and are overruled.

IV. In view of the conclusion reached in the preceding paragraph, it is unnecessary to enter upon a discussion of the notice given of the election. Compliance with the statute as construed by this court (State ex rel. v. Gordon, 242 Mo. 615) is not difficult. In that case a form of notice, from heading to signature, was set out and approved by this court in Banc.

Notice.

The alternative writ is quashed. All concur, except *Woodson, C. J.,* and *Bond, J.,* absent.