THE STATE ex rel. WAYNE COUNTY, AND C. H. JONES et al., Judges of County Court, v. GEORGE E. HACKMANN et al.

In Banc, July 3, 1924.

**ELECTION: Designation of Precincts: Failure to Vote in Some.** Where the election districts and precincts had long been legally established by an order of record of the county court, and notice thereof had been duly given, and for years the voters had voted at such precincts, and the sheriff had posted in each precinct notice of the special election to issue county bonds, the fact that the published notice designated only the county as the "place" in which the election would be held, and the fact that no votes were cast in two precincts, did not, in the absence of fraud, invalidate the election, or render invalid the bonds issued in pursuance thereof, but it will be presumed that the voters knew the location of their respective precincts and failed to vote on some ground other than lack of notice.

*Held*, by DAVID E. BLAIR, J., dissenting, that since the Act of 1919 (Sec. 1053, R. S. 1919) provided that the order of a special election "shall, among other things, specify the time, place and purpose of the election," the published notice of such election was not sufficient, and the election was invalid.

Headnote 1:    Elections, 20 C. J. sec. 211 (1926 Anno).

Mandamus.

Permanent Writ Awarded.

*Wm. T. Powers* and *Charles Claflin Allen, Jr.,* for relators.

(1) The statute was substantially complied with. (a) Substantial compliance with the statute is all that is required, and mere irregularities, in the absence of fraud, will not defeat the purpose of an election, nor invalidate bonds authorized at such election. 20 C. J. 97,

par. 82; State ex rel. v. Gordon, 242 Mo. 623; State ex rel. v. Gordon, 268 Mo. 338; State ex rel. v. Allen, 178 Mo. 576; State ex rel. v. Hackmann, 273 Mo. 695; State ex rel. v. Salt Lake City, 35 Utah, 25. (b) The order of the county court and the notice published by the clerk complied with the statute as to "place" of holding the election when "in the County of Wayne in the State of Missouri" was set out as the place of the election. The voters of the county had for many years been voting at the several precincts legally established by the county court, and they knew of no other place or places to go than to their respective usual voting places. State ex rel. v. Gordon, 242 Mo. 624; State ex rel. v. Hackmann, 268 Mo. 695. (c) The failure of the county court to set out the particular place or building, or spot of ground, in each election precinct, was at most a mere irregularity and did not deprive any voter in the county of his or her right to vote. Courts have always ruled that mere irregularities which did not affect the result of the election, and which did not prevent a free and fair expression of the will of the people, would not void an election. State ex rel. v. Town of Westport, 116 Mo. 604; Light & Magnetic Water Co. v. City of Lebanon, 163 Mo. 246; State ex rel. v. Hackmann, 273 Mo. 695; State ex rel. v. Allen, 178 Mo. 576. (d) The statutes governing courthouse bond elections provide that all such elections shall be held and conducted in the same manner and in all respects as in elections for state and county officers. Sec. 1056, R. S. 1919. The voters of Wayne County were charged with knowledge of this statute, and therefore knew that the election would be held at the usual voting places in each precinct, there being no other place for them to go to cast their ballot than the place they had been going for years and years. (e) Cases holding that the particular polling places should be designated in school bond elections have no bearing here. A county has regularly established voting precincts which are already known, while school districts have not and must be designated by them specially for

each election. R. S. 1919, sec. 4759; State ex rel. v. Gordon, 242 Mo. 623. (f) The record is barren of even an intimation that any voter in said county failed to understand where he should vote or was deprived of his right to vote in the special election by reason of any alleged defect or ambiguity in the notice of election as published. The election is therefore valid. State ex rel. v. Gordon, 242 Mo. 615; State ex rel. v. Hackmann, 273 Mo. 695. (g) The fact that the voters of the county in great numbers actually voted at the several legally established voting precincts in the county is conclusive evidence that they had actual notice of the place of holding the election. 20 C. J. 96, par. 80. (2) The provision in the statute for the designation of the place of election is directory. (a) When a statute provides that certain acts or things shall be done in a particular time or in a particular manner, and does not declare that their performance is essential to the validity of the election, then they will be regarded as mandatory if they do, and directory if they do not, affect the actual merits of the election. McCrary on Elections (4 Ed.) sec. 225; State v. Swearingen, 128 Mo. App. 613. (b) Even though the statutes governing courthouse bond elections provide that the order and notice shall state "the time, place and purpose" of the election, yet, in view of the provisions of Section 1056 that the election shall be held in the same manner as elections for state and county officers, and in view of the further fact that the actual results and the actual merits of the election were - not affected by the omission of the designation of the particular buildings in the several precincts, the provision of the statute as to "place" is directory and not mandatory. McCrary on Elections, supra; 20 C. J. 97, par. 82.

*Jesse W. Barrett,* Attorney-General, and *Henry Davis,* Assistant Attorney-General, for respondent.

(1) The statute requires the polling places to be designated in the order and notice of election for county

courthouse bonds. R. S. 1919, secs. 1053, 1054. (2) Time and place of holding special elections are of the essence, and statutes requiring the order and notice to state the place of holding the election are mandatory; failure to comply therewith renders the election void. State ex rel. v. Ross, 160 Mo. App. 682, 693; Martin v. Bennett, 139 Mo. App. 237; State ex rel. v. Martin, 83 Mo. App. 55; 1 Dillon on Mun. Corp. (5 Ed.) sec. 370; 20 C. J. 97.

WOODSON, J.—This is a proceeding instituted in this court by the relators against the respondent to compel him to register $50,000 of bonds of Wayne County issued by that county to build a court house therein. The facts of the case are undisputed and are substantially as follows:

The relators are the duly elected and acting county judges of said county, and the respondent is the duly elected and acting State Auditor of the State of Missouri.

The terms of the county court of said county begin on the third Mondays in February, May, August and November of each year. On the 27th day of September, 1923, a petition in writing was presented to the said court, signed by more than one hundred qualified voters of said county, who were taxpayers therein, praying said court to submit to the qualified voters of said county at the earliest possible date consistent with the laws of the State, proposing to increase the existing indebtedness of the county as follows: (a) That the amount of the increase in indebtedness to be submitted to the voters be in the sum of $50,000. (b) That the increase of indebtedness of $50,000 to be submitted to the voters be for the purpose of constructing a new court house in said county. (c) That bonds be issued according to law for $50,000, and that they be issued so that the principle thereof shall be paid within twenty years from the date of contracting the same. (d) That the court call a special election as provided by law, for the purpose of

submitting the said proposition to the qualified voters of said county.

Said court duly met in legal session on that day, the same being the 9th day of the August term, and upon the presentation of said petition said court duly made and entered an order calling an election to be held in said county for the purpose of voting upon said proposition.

Said order was in regular form and duly followed the prayer of the petition before mentioned, and ordering the election to be held on Tuesday the 6th day of November, 1923, and specifying that the bonds should bear interest at five per cent per annum. Thereafter, and in obedience to said order, the clerk of said county duly gave notice of said election by advertisement for three consecutive weeks in the Wayne County Journal-Banner and in the Greenville Sun, the same being weekly newspapers published in said county. Said notice was duly published in each of said papers on October 4, 11 and 18, 1923. The notice of election was in due form, stating the petition had been presented praying for the increase of the indebtedness of the county to the extent of $50,000 for the purpose of building a court house in said county, and stating the date of the election to be held.

Long prior to the happening of the events hereinbefore mentioned, the said court by order duly made of record divided the county into twenty-five election districts and established one election precinct in each of said districts, and said order described the several districts created and the boundaries of each and designated the precinct established in each.

The clerk of said county within twenty days after making said order, made out a copy thereof for each district so created and precinct established, and delivered the same to the sheriff of said county. Within six days thereafter said sheriff caused such copies to be put up at each precinct and in a public place in each of said districts.

Ever since the last date above mentioned all elections held in said county, both general and special, have been held at the precincts so established by said court on said last named date.  Said election districts and precincts are well known to all the voters of said county and they are accustomed to voting at them.

On the 12th day of October, 1923, the county court met in regular session, and by order duly made of record appointed two judges and two clerks of election for each election precinct in said county.

On November 6, 1923, the election was duly held in said county in pursuance to said petition and order of said election, in all the regular election precincts in said county, save and except *two,* namely, precincts known as Smith's Mill, No. 22, and Silva, No. 23, in St. Francois Township, and every voter cast a secret ballot.

The ballot prepared and voted was in legal form, and is not challenged.  The ballots were duly counted and returned to the county clerk, who duly counted them in the presence of the county judges.  The records show that there were 2285 votes cast at the election, of which 1595 were cast for the increased indebtedness and 690 were cast against it.

"On the 9th day of November, 1923, the court met in due and lawful session and canvassed the ballots and found that more than two-thirds of those voting on the proposition voted in favor of the increase.

The total number of qualified voters residing in election district No. 22, known as Smith's Mill, is ——— and the total number of qualified voters residing in election district No. 23 known as Silva is ———.

On the 18th day of February, 1924, the court met in regular session and directed the issuance of the $50,000 bonds, and ordered that they be dated February 1, 1924. in the denomination of $1000 and $5000 each, bearing five per cent interest, payable semi-annually and maturing serially within twenty years from their date.  On said 18th of February the court provided for the col-

lection of an annual tax sufficient to pay the interest on said bonds and to create a sinking fund for their pay ment.

Thereafter the treasurer of said county duly advertised said bonds for sale, and sold them for ninety-five per cent of their par value, and on the 18th day of February, 1924, the court duly approved said sale.

Thereafter said bonds were signed by the presiding judge of said county court, and attested by the clerk thereof, with the seal of the court thereto affixed.

The value of all the taxable property of said county according to the state and county assessments on June 1, 1920, was $8,596,869.33, and according to the assessment of June 1, 1921, was $8,239,289. The indebtedness of said county on September 27th and on November 6, 1923, of every kind and character was as follows: Road bonds, $182,000; Warrants, $61,148.95.

The indebtedness of said county at this time is less than the amount last above stated.

The relators on —— day of April, 1924, tendered to respondent said bonds with the statutory fee of $50 and requested him to register them, but he refused to do so, and still refuses.

The court house of said county has been condemned and cannot be used for any purpose, and said bonds have been sold, but the county cannot deliver them, because of the respondent's refusal to register them. Relators contend that they are without any other remedy save and except mandamus.

The respondent contends that the above facts do not constitute a cause of action, and that they show that no election was held in two of the election districts of the county.

There is but one legal proposition presented by this record to this court for determination, and that is, did the failure to hold the election in Precinct No. 22, known as Smith's Mill and in Precinct No. 23, known as Silva, render the entire election void? Counsel for relators in-

sist that such omission does not render the election void, while those for the respondent contend that it does.

Counsel contend that the order of the county court, and the notice published by the clerk complied with the statute as to the "place" of holding the election when "in the County of Wayne in the State of Missouri" was set out as the place of the election. It is contended that this is true, especially in the light of the fact that the voters of the county had for many years been voting at those several precincts legally established by the county court, at both general and special elections, and when they knew of no other place or places to go than to their respective voting places.

Predicated upon that state of facts counsel contend that such omission was but a mere irregularity, which in the absence of fraud did not defeat the purpose of the election, and cite the following cases in support thereof: 20 C. J. 97, par. 82; State ex rel. v. Gordon, 242 Mo. l. c. 623; State ex rel. v. Gordon, 268 Mo. l. c. 338; State ex rel. v. Allen, 178 Mo. l. c. 576; State ex rel. v. Hackmann, 273 Mo. l. c. 695; State ex rel. v. Salt Lake City, 35 Utah, 25.

In the case of State ex rel. v. Gordon, 242 Mo. 623, this court in discussing this question said:

"The case of State ex rel. v. Salt Lake City, 35 Utah, 25, is a very good authority for relators, in that it declares that in the matter of giving notice of a special election to issue bonds, the law only requires a substantial compliance with the statute. The law in that case required the notice of election to designate the place where the election was to be held, but the notice published merely recited that the election was to be held in the city of Salt Lake; and this was adjudged to be sufficient, notwithstanding it failed to designate the several polling places in said city where the voters should cast their ballots."

This case was here again and reported in 268 Mo. 321, and is cited with approval on page 338 on the point

here in question, and is again cited with approval in the case of State ex rel. v. Hackmann, 273 Mo. l. c. 695.

The undisputed facts are that the districts and pre-cincts had long before been legally established by an or-der of record of the county court and notice thereof had been duly given thereof, and for many years the voters of the county had been voting at their respective pre-cincts. There is no evidence contained in this record that at any election any voter had had trouble in finding his voting precinct.

In the absence of any fraud being shown we must presume that the voters knew where their respective vot-ing precincts were located and did not fail to vote at this election on that account.

Entertaining the views of the law before expressed, we hold that the respondent should register the bond, and we order the alternate writ heretofore issued be made permanent. All concur, except *David E. Blair, J.,* who dissents in opinion filed; *James T. Blair, J.,* concurs in principal opinion and in the result only.

DAVID E. BLAIR, J. (dissenting).—The cases cited in the majority opinion were all decided prior to the Act of 1919, Laws 1919, page 172. Section two of that act provided that the order of the special election "shall, among other things, specify the time, place and purpose of the election." This section became Section 1053, Revised Statutes 1919. The amendment thereof by the Act of 1921, Laws 1921, page 162, did not affect the above provision as to contents of the order.

When the cases cited in the majority opinion were decided the statute simply provided that the county court should order a special election and "make an en-try of such order on the records of the court." [Sec. 1260, R. S. 1909; Laws 1913, p. 125, sec. 8.] In State ex rel. v. Gordon, 242 Mo. l. c. 623, BROWN, J., largely based his ruling that designation of polling places was not necessary upon the absence from the then existing

statute of any direction "that notice shall be given of the places where elections are to be held." Such direction was made by Laws 1919, page 172.

The requirement that the order (Sec. 1053) and the notice of election (Sec. 1054) shall specify "the time, place and purpose of the election" means that more explicit notice of the election shall be given than merely that such election shall be held within the county. That much was implied under the previous statute.

I am unable to agree with the conclusion reached in the majority opinion that the failure of the county court in its order and of the clerk of that court in his notice to designate the place of holding the election was a mere irregularity. The statute provides that such place of holding the election *shall* be designated. As above pointed out, the cases relied upon to support the conclusion announced were all ruled prior to the amendment of 1919.

The fact that the construction of a court house for Wayne County is of great public importance cannot justify our holding the election to be valid when plain provisions of the statute authorizing the holding thereof have not been followed.

For the foregoing reasons it becomes my unpleasant duty to dissent.