**William HENKEL, Plaintiff-Appellant,**

v.

**CITY OF PEVELY et al., Defendants-Respondents.**

No. 35481.

Missouri Court of Appeals, St. Louis District, Division 2.

Oct. 2, 1973.

Motion for Rehearing Denied Nov. 13, 1973.

Gregory D. O'Shea, St. Louis, for plaintiff-appellant.

Jeremiah Nixon, Joseph Cunningham, Hillsboro, for defendant-respondent, City of Pevely.

PER CURIAM.

This is an appeal by the appellant, William Henkel, from a judgment and order of the Circuit Court of Jefferson County, entered on May 14, 1973, sustaining a motion for summary judgment in favor of the defendants-respondents, the City of Pevely, Evelyn Dixon, the City Clerk, Donald Dixon, Mayor of the City and the Bank of Hillsboro. For the reasons hereinafter stated, we affirm the action of the trial court.

The appeal was originally filed in the Supreme Court after the denial of appellant's motion for new trial or in the alternative to set aside summary judgment, but by order of the Supreme Court, the cause was transferred, upon respondents' motion, to this court for decision for the reason that the Supreme Court did not have jurisdiction under Article V, Mo.Const.,[1] V.A. M.S.

On January 19, 1965, the City of Pevely, a fourth class city, adopted Ordinance No. 39 which authorized and directed the issuance of $30,000 in negotiable interest bearing sewer system construction revenue bonds of the City of Pevely (hereinafter referred to as sewer system revenue bonds) for the purpose of paying part of the cost of constructing a sewer system. This bond issue resulted from elections held in 1962 and 1964.

The issuance of thirty such revenue bonds was authorized, in the amount of $1,000.00 each bearing 5¼ percent interest. The bonds were to mature on the first day of January of each year beginning in 1968 and ending in 1989 (after 1983 more than one bond was to mature). The ordinance provided in effect that after January 1, 1975, the bonds may be "called in, paid, and redeemed, in inverse numerical order, at par and accrued interest on January 1, 1975, or on any interest payment date thereafter prior to maturity. Any bond so called shall be paid at its par value plus accrued interest and plus a premium of Fifty Dollars ($50.00) per bond . . ." There were no provisions in the ordinance or the covenants for the refunding of the bonds. At the time of this proceeding twenty-two bonds were still outstanding.

On January 26, 1972, at a special session of the Board of Aldermen of the City of Pevely, the Board adopted Ordinance No. 113 entitled "An Ordinance Combining the Waterworks System and the Sewerage System of the City of Pevely, Jefferson County, Missouri." On the same evening the Board took up the matter of holding a special bond issue election on Tuesday, February 22, 1972, for the purpose of submitting two separate propositions for the issuance of bonds to obtain funds with which to finance the acquisition by purchase or construction of a waterworks system and improving and extending the sewerage system and adopted Ordinance No. 114 to that effect. That ordinance provided for the holding of a special election to vote on the issuance of $70,000 in general obligation bonds and $230,000 in revenue bonds. Section 1 of that ordinance provided that "a special bond issue election shall be and the same is hereby called and ordered to be held in the City of Pevely, Jefferson County, Missouri on Tuesday, the 22nd day of February, 1972, for the

---

1. This is the second time this court has had occasion to deal with this case. On December 12, 1972 this court held that the plaintiff's petition, which challenged the election on the issuance of bonds failed to state a claim upon which relief could be granted because the petition contained general allegations of illegality, voidness and impropriety. Henkel v. City of Pevely, 488 S.W.2d 949 (Mo.App.1972). On March 8, 1973, plaintiff filed the present petition in Division No. 2 of the Circuit Court of Jefferson County.

purpose of submitting to the qualified electors of said City the following Propositions:

## "PROPOSITION NO. 1.

Proposition to issue the bonds of the City of Pevely, Jefferson County, Missouri, to the amount of Seventy Thousand Dollars ($70,000) to provide funds for the purpose of paying part of the cost of acquiring by purchase or construction a waterworks system within and for said City and improving and extending the sewerage system of said City; said systems to be owned exclusively by said City and said bonds to be payable from taxes to be levied upon all taxable, tangible property in said City."

## "PROPOSITION NO. 2.

Proposition to issue negotiable combined waterworks and sewerage system revenue bonds of the City of Pevely, Jefferson County, Missouri, to the amount of Two Hundred Thirty Thousand Dollars ($230,000) to provide funds for the purpose of paying part of the cost of acquiring by purchase or construction a waterworks system within and for said City and improving and extending the sewerage system of said City; said systems to be .owned exclusively by said City and said bonds to be payable solely from the revenues to be derived by said City from the operation of the combined waterworks and sewerage system of said City."

The ordinance further specified the time and places of the special election, and directed the City Clerk to cause notice of the election to be published. The notice of the special election contained the exact wording of the two propositions quoted above. The ballot as specified in the ordinance also contained the same wording, but in the form of a question as to whether the propositions should be adopted and with a box for the voter to vote "yes" or "no". Notices were published in The News Democrat, a weekly publication in Jefferson County, notifying the voters of the special election and of the Propositions referred to. The notices in the publication informed the electorate of the time and places of the election and informed the public that Proposition No. 1 would be deemed to have carried if two-thirds of the voters voted favorably, and that Proposition No. 2 would carry if four-sevenths of those voting voted favorably. At the election, the two propositions carried—115 votes "yes" and 6 votes "no."

On August 2, 1972, at a regular session of the Board of Aldermen, the Board adopted a resolution directing the offer for sale, on August 22, 1972, of $70,000 of "Combined Waterworks and Sewerage System Bonds" and $255,000 of "Combined Waterworks and Sewerage System Refunding and Revenue Bonds" authorized at the special election. It was resolved that the bonds be sold on sealed bids and that bidders be required to bid for both issues. The City Clerk was directed to give notice of the sale of the bonds by mailing to all interested banks and bond houses a notice of the Bond Sale of the $70,000 and $255,000 issues. The notice of bond sale provided that "The first 25 bonds [in the amount of $1,000.00 each] shall not bear interest in excess of 5¼% per annum." The official statement of the Notice of Bond Sale and Proposal for Purchase indicated that "the requirement that the first 25 bonds of the $255,000.00 revenue bond issue bear not over 5¼% interest is made necessary by the fact that these are the bonds being refunded."

Prior to the sale of the bonds, plaintiff, in August, 1972, filed his first petition to enjoin the issuance of the bonds which was resolved by this Court on December 12, 1972. Henkel v. City of Pevely, 488 S.W. 2d 949 (Mo.App.1972). Thereafter plaintiff filed the petition involved herein on March 8, 1973, in Division 2 of the Circuit Court of Jefferson County. That petition alleged that the Bank of Hillsboro is a holder in due course of certain 1965 issue sewer revenue bonds, that "he [plaintiff]

brings this cause of action as an individual, owner of real and personal tangible property; as a taxpayer, citizen and voter within the City of Pevely, Missouri; that he adequately represents such a class of citizens, voters and taxpayers . . .; that as a member of a class, he adequately represents the class of taxpayers and is fairly chosen." He also alleged that the Bank of Hillsboro represents a class of holders of the sewer revenue bonds of 1965. The petition alleged the submission of the two propositions referred to, and that a notice of bond sale and proposal of purchase has been circulated stating that the "City seeks to refund the outstanding Sewer Revenue Bonds, Series 1965." The petition alleged further that the Sewer Revenue Bonds, Series 1965 or the covenants therein contain no provision for refunding, that they are not callable until 1975[2] and that any attempt at premature financing "will result in the necessity of redemption and payment at an accelerated interest rate which rates are higher than the amounts specified on the face of said bonds and upon the incurring of penalties, thus and thereby raising amounts to be paid on said bonds in excess of the specified rates within said documents." He states in paragraph 10 of the petition that any attempt to issue or refund either series of bonds is "unlawful" because the ordinances, procedures and notices of the election and the passage by the voters and the issue of the bonds were not made in compliance with sections 250.030–250.080, RSMo., V.A.M.S., (a) because the ordinances, procedures, notices, and election failed to follow the "mandatory" language of Chapter 250 requiring the notice to indicate that a "combined" water and sewer system was to be voted on, thus misleading the voters, (b) because the ordinances and bond notice in connection with the 1972 revenue bond issue failed to inform the voters "of the extent of the indebtedness that will be incurred as a result of the is-

suance . . ."; (c) because the City has no authority to call an election for the purposes of authorizing indebtedness for the construction of a water system and a sewer system (unless combined), and (d) because the attempted refunding of the 1965 bonds would be contrary to § 250.180 in that the payment of penalties and interest would be contrary to that section and incur additional indebtedness over and above the interest rate included in the original 1965 series. Plaintiff further urges in his petition that if the bonds are negotiated, the plaintiff and all the citizens "will be caused a burden of undue taxation as a result of illegal and invalid procedures by the City of Pevely."

Following the filing of the petition, the defendants moved for summary judgment and to dismiss, and soon thereafter affidavits were filed by the City Clerk with four exhibits consisting of the records of the City detailing the ordinances, election and resolutions and the facts as outlined above. The defendants, other than the Bank, also filed an answer. The plaintiff, Henkel, filed a counter-affidavit stating that the allegations contained in certain specified paragraphs (4, 5, 9, 11, and 12) are true and correct and that the "allegations are material both as to issues of law and fact. . . ."

A hearing was held on the motion for summary judgment on April 9, 1973. At the hearing, attorneys argued that the City's authority to refund the outstanding, 1965, bonds is derived from the Constitution of Missouri, and § 250.180 gives specific authority to refund outstanding sewerage system bonds, and the premium is the normal vehicle for refunding. In effect, they indicated that after 1975 there would be twenty-two outstanding bonds which would require a $50.00 premium amounting to $1,100.00, and that this sum would be paid out of existing City funds "that have been accumulated from sewer-

---

**2.** The 1965 ordinance provided that "any bond so called [on January 1, 1975] shall be paid at its par value plus accrued inter-

est and plus a premium of Fifty Dollars ($50.00) per bond." Exhibit A, p. 24e.

age operation," which is not "taxpayer's money," but which is "derived from sewer service charges."

The attorney for plaintiff argued at the hearing that as to proposition No. 1, the absence of the word "combined" water and sewer system in effect makes it an "illegal proposition or a logrolling proposition because you're talking about water systems and sewer systems, two separate entities." He also argued that refunding of the 1965 bonds was improper.

On May 14, 1973, the trial court sustained the respondents' motion for summary judgment. Motion for new trial or in the alternative to set aside summary judgment was filed by appellant alleging that the pleadings raised "factual issues as to the regularity of the bond issue and election proceedings," and factual issues relating to the "proposed methods of refunding or refinancing of existing and outstanding 1965 Series Revenue Bonds in relation [violation?] to the provisions of § 250.180." The motion urged that the court erred in granting summary judgment because there was a denial of the plaintiff's and defendants' status as a member of a class, that proposition No. 1 failed to follow Chapter 250, that the attempted refunding of the 1965 bonds created a new indebtedness, that Proposition No. 1 presented a logrolling proposition and that summary judgment in this case denies plaintiff due process. The motion for new trial was heard and overruled and this appeal followed.

On this appeal, the plaintiff makes three points: (1) Proposition No. 1 failed to follow the language of Chapter 250 and therefore presented a defective proposition making the election unconstitutional and void; (2) Proposition No. 2 is defective because the voters were not informed that the 1972 bonds were to be used to refund the 1965 bonds, which had no provisions for refunding, thus creating a new indebtedness contrary to § 250.180 and (3) that

the granting of summary judgment denied plaintiff the opportunity to develop the theory of his pleadings and precluded the presentation of evidence relating to factual issues concerning proposed methods of refunding the 1965 bonds.

The defendants-respondents counter by contending (1) that Proposition No. 1 did not submit a dual proposition nor was the 1972 bond issue defective because of the omission of the word "combined" in the notice of election, (2) that the City had the power to issue 1972 refunding bonds without voter approval and therefore the attack on the 1972 bond issue on the ground that no notice was given that some of the bonds would be refunded is without merit, and (3) summary judgment was the proper remedy under the pleadings, affidavits and exhibits.

The thrust of the plaintiff's first point is that Proposition No. 1 omitted the word "combined" so that the voters were not properly informed that they were voting on a "combined" waterworks system and the improvement of a sewerage system. Implicit in this point and urged in the motion to set aside the summary judgment is the contention that Proposition No. 1 submitted a dual proposition, or "logrolling." [3] Plaintiff urges that there is statutory authority, § 250.030, for any city to adopt an ordinance to operate a combined water and sewer system, and to meet the costs through the issuance of bonds for that purpose. § 250.040. He contends that the failure to submit the proper description of a "combined" water and sewer system in Proposition No. 1 presented a defective proposition since the notice of election failed to indicate to the voters the nature of the proposition.

It has long been the law of Missouri that doubleness in propositions submitted to voters in bond elections is to be condemned to prevent the yoking together of distinct things to the end that the two

---

3. For a discussion of purposes against logrolling, see City of St. Louis v. Tiefel, 42 Mo. 578, 590 (1868).

combined may attract a majority of the voters when neither separately might be able to do so. State ex rel. Pike County v. Gordon, 268 Mo. 321, 188 S.W. 88 (banc 1916); State ex inf. Barrett v. Maitland, 296 Mo. 338, 246 S.W. 267 (banc 1922). 64 Am.Jur.2d, Public Securities and Obligations, § 154, pp. 196–197 (1972). But not every proposition which contains multiple submissions is to be condemned. The test whether there is presented a single or multiple proposition is whether or not there exists a natural relationship between the objects united in one proposition and whether or not the several projects are so related that united they form in fact one rounded whole. " 'The test is whether the several parts of the proposition are plainly and naturally so related or connected that, united, they form in fact but one united, rounded whole, and may be logically viewed as parts or aspects of a single plan. If so, or if they are dependent one upon the other, they may be grouped together and submitted as one proposition; if not, and if they have to do with different subjects which are so unrelated and incongruous and their association so artificial as to constitute logrolling and a fraud upon the voter, separate submissions are required * * *' " State ex rel. Phelps County v. Holman, 461 S.W.2d 689, 691 (Mo. banc 1971) quoting from State ex inf. Taylor ex rel. Schwerdt v. Reorganized School District R–3, 257 S.W.2d 262, 266–267 (Mo.App.1953). Under these tests and under the authorities in this and other states, State ex rel. City of Chillicothe v. Wilder, 200 Mo. 97, 98 S.W. 465 (1906) (submitting water works and electric light plant does not violate rule although upon a new submission the proposition "should" use the word combined); see cases collected in Annot., 4 A.L.R.2d 617, 654 (1949) and 64 Am.Jur.2d, Public Securities and Obligations, § 156, p. 201 (1972), the rule against doubleness of submission is not violated. A water system and the improvement of a sewer system complement one another. City of Maryville v.

Cushman, 363 Mo. 87, 249 S.W.2d 347, 358 (1952).

■ Hence Proposition No. 1 is not violative of the rule against double submission and hence it follows that the insertion of the word "combined" in the proposition is not mandatory. See also §§ 250.060 and 250.070(4) where the form of the ballot is to be construed as directory and not mandatory. We are not persuaded that a fraud was practiced upon the voters as to Proposition No. 1. We rule this point against appellant.

Appellant next contends that Proposition No. 2 is defective because the voters were not informed that some of the 1972 bonds were to be used to refund the outstanding 1965 sewer revenue bonds, and, because those bonds had no provisions in their covenants for refunding. He contends further, as we understand it, that the refunding bonds in the amount of $25,000 were contrary to and violative of § 250.180 in that the refunding bonds exceeded the amount of the principal of the outstanding indebtedness to be refunded and the accrued interest. They were not, therefore, refunding bonds.

■ (1) The City was not required to inform the voters that certain of the 1972 bond issue were to be used to refund the 1965 sewer bonds. § 250.180 provides that "For the purpose of refunding, extending and unifying the whole or any part of any valid outstanding bonded indebtedness, whether payable from the revenues of a sewerage system or of a combined waterworks and sewerage system, any city . . . operating such system may issue refunding bonds not exceeding in amount the principal of the outstanding indebtedness to be refunded and the accrued interest to the date of such refunding bonds. *The governing authority of such city, . . . shall provide for the payment of interest at not to exceed the same rate and the principal of such refunding bonds in the same manner and from the same*

**148**

*source as was provided for the payment of interest on and principal of the bonds to be refunded."* (Emphasis added.)

In City of Maryville v. Cushman, 363 Mo. 87, 249 S.W.2d 347 (banc 1952), one of the contentions raised was that certain proposed revenue bonds would be invalid because an ordinance authorized the city to call for payment and redemption prior to maturity upon payment of a specified premium. "The heart of this contention is that the possible payment of such call premium was not submitted to the voters at the special election." 249 S.W.2d at 355. The Supreme Court held that § 250.080 provides that revenue bonds may provide for redemption, "with or without premium, and at such times and upon such conditions as may be provided *by the governing body of the city, town or village . . .* " 249 S.W.2d at 355. The Court went on to say that the statute permitting a provision for a call before maturity does not require the submission to the voters. Such matters as maturities and whether callable are left to the governing body of the city.

Further, the holding in State ex rel. Consolidated School Dist. No. 8 of Pemsicot County v. Smith, 343 Mo. 288, 121 S.W.2d 160, 164 (banc 1938) remains the law today: "The weight of authority holds to the view that the issuance of bonds by a public corporation for refunding a valid, out-standing indebtedness does not increase the total indebtedness within the meaning of a constitutional limitation *or require the consent of the voters for the issuance of such bonds,* but merely changes the form of an existing debt." (Emphasis added.)

■ (2) The 1972 refunding bonds in the amount of $25,000 to refund the sewer bonds of 1965 were properly refunding bonds. Various documents including the official statement of the Notice of Bond Sale and Proposal for Purchase specified that the first 25 bonds of the $255,000 bond issue bore 5¼% interest for the reason that they were to refund the 1965 bonds. The refunding bonds carried the same interest

as the 1965 bonds with accrued interest. There was, therefore, sufficient compliance with the statute.

The fact that there was a $50 premium to be paid on the outstanding 1965 bonds did not preclude the 1972 bonds from being refunding bonds. § 250.080(2) provides that revenue bonds may be subject to redemption prior to maturity, with or without premium, and at such times and upon such conditions as may be provided by the governing body of the city.

The $1,100.00 representing the total of the premium on the 22 bonds of the 1965 issue remaining to be called did not create an additional indebtedness of the City for the reason that as indicated in the hearing on the motion for summary judgment, the money is not derived from taxes but from sewer service charges. The source of premium is not from the bond issue, but from revenue money derived from the operation of the sewer system.

The appellant finally contends that summary judgment was improvidently granted because he was denied the opportunity to develop his theory of his pleadings by presenting evidence relating to the factual issues concerning the proposed methods of refunding the 1965 revenue bonds.

Rule 74.04(b), V.A.M.R. provides that a party against whom a claim is asserted may move with or without supporting affidavits for a summary judgment in his favor as to all or any part thereof. A summary judgment shall be rendered " . . . if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is *no genuine issue* as to any material fact and that any party *is entitled to a judgment as a matter of law."* Rule 74.04(c). "In no case shall a summary judgment be rendered on issue triable by jury or the court without a jury unless the prevailing party is shown by unassailable proof to be entitled thereto as a matter of law." Rule 74.04(h); Stanturf v. Sipes, 447 S.W.2d 558, 560 (Mo.1969).

The object of this procedure, established in this state in 1960, is to separate what is formal or pretended from what is genuine and substantial so that only the latter may subject a party to the burden of a trial. Reis v. Metropolitan St. Louis Sewer District, 373 S.W.2d 22, 27 (Mo.1963) relying on Moore's Federal Practice and "to provide against the delay which sometimes comes from the formal trial of cases in which there is no substantial issue of fact . . ." Brown v. Prudential Insurance Company of America, 375 S.W.2d 623, 629 (Mo.App.1964). The appellate court, as well as the trial court, must view the record on summary judgment in the light most favorable to the party against whom the judgment is rendered. Stanturf v. Sipes, supra at 561 of 447 S.W.2d; Cooper v. Finke, 376 S.W.2d 225, 228 (Mo.1964).

Appellant contends that there are several factual issues that exist which he should be permitted to develop: (1) the factual issue of the class status of the appellant and the Bank of Hillsboro; (2) the regularity of the 1972 bond issue and election proceedings; (3) the methods of refunding the 1965 bonds; (4) failure of Proposition No. 1 to follow the language of Chapter 250; (5) the creation of a new indebtedness not presented to the voters in Proposition No. 2; (6) that Proposition No. 1 presents a double proposition; and (7) summary judgment denies appellant due process.

The pleadings, affidavits and exhibits filed show all of the proceedings of the Board of Aldermen, the ordinances, the election, the public offering of the bonds, the method of refunding and all other pertinent information necessary for a disposition of this cause. Most, if not all, of the issues raised are matters of law, e. g. whether Proposition No. 1 presents a double proposition, and as to other issues raised, the pleadings and affidavits are sufficient to make a determination, e. g. election proceedings and the methods of refunding of the 1965 bonds, or the issue is irrelevant, e. g., the class status. From the record, the pleadings, affidavits and exhibits filed, we believe as did the trial court that there are no genuine issues of material facts to be tried and that summary judgment was a proper procedure in this case. Where summary judgment is proper, there is no denial of due process. Kroger Company v. Roy Crosby Company, 393 S.W.2d 843 (Mo.App.1965).

The judgment of the circuit court granting summary judgment is affirmed.

All the Judges concur.